Caroline J. REBER

v.

Henry M. TSCHUDY and Edna R. Tschudy, his wife, John B. Slipp and Erma E. Slipp, his wife, and Bank of Pennsylvania, Executor of the Estate of Lloyd L. Cramp,

Appeal of Henry M. TSCHUDY and Edna R. Tschudy.

Commonwealth Court of Pennsylvania.

Argued March 31, 2003.

Decided May 15, 2003.

Christopher J. Hartman, Reading, for appellant.

Walter M. Diener, Jr., Wyomissing, for appellee.

Before: PELLEGRINI, Judge, FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Henry M. Tschudy and Edna R. Tschudy, his wife, (together, the Tschudys) appeal from an order of the Court of Common Pleas of Berks County (trial court) confirming the report and supplemental report of a board of view that granted Caroline Reber's (Reber) request to widen an existing private road across the Tschudys' property from fourteen feet to twenty-five feet and denying the Tschudys' exceptions to the reports.

Reber owns a thirteen-acre tract of undeveloped land located in Robeson Township. On August 18, 1980, Reber filed a Petition for Appointment of a Private Road Board of View (First Petition) pursuant to section 11 of the Act of June 13, 1836, P.L. 551, *as amended* (Act),[1] 36 P.S. § 2731, seeking appointment of a board of view to determine the necessity of laying out a private road that would allow her ingress to and egress from her landlocked property onto Pennsylvania State Highway Route 82. The private road would cross over the lands of four owners, including the Tschudys.[2] On July 27, 1981, following a view of the premises and hearings on the

---

1. That section of the Act provides, in relevant part:

   The several courts of quarter sessions shall, in open court as aforesaid, upon the petition of one or more persons ... for a road from their respective lands ... to a high-

way ... direct a view to be had of the place where such road is requested, and a report thereof to be made....
   36 P.S. § 2731.

2. The private road also crossed over lands then owned by Joseph and Lottie Detorre,

matter, the board of view issued a written report finding that a private road was necessary and that its width should be fourteen feet, as recommended by a professional surveyor. The board of view's report was confirmed nisi on the same date, and, after resolution of several legal issues, the trial court entered final judgment on the award of just compensation to the affected property owners on July 17, 1989.

In 1990, Reber began construction of a dirt road by excavating through stakes placed by a surveyor; at the road's steepest grade, Reber also installed two drainage pipes to retard stormwater flow. Since then, Reber has used this road to access her still unimproved property, and on two occasions, the road was used by logging trucks that were timbering Reber's property. However, over time, the roadway has eroded and become deeply rutted along its entire length of 1,680 feet, making it unusable by conventional automobile.[3]

On December 22, 1998, Reber filed a second Petition for Appointment of a Private Road Board of View (Second Petition) under section 11 of the Act, 36 P.S. § 2731; this time Reber sought appointment of another board of view to determine the necessity of widening the existing private road from fourteen feet to twenty-five feet, which is the maximum width allowable under the Act. See section 5 of the Act, 36 P.S. § 1901. Reber claimed that the widening is necessary because stormwater has caused ruts and gullies in the road making it unsafe for travel. In accordance with the recommendations of her engineer, Reber proposed adding five and one half feet on each side of the existing road to allow for the installation of swales, additional pipes and/or storm drains, and for the regrading of banks to remedy the problem and make the road usable. The Tschudys objected to Reber's Second Petition.

Relying on *In re Private Road of Brubaker v. Ruhl*, 23 Pa.Cmwlth. 418, 352 A.2d 566 (1976), the trial court determined as a threshold issue that it had jurisdiction under the Act to appoint a board of view for the Second Petition, even though that board of view would be considering the necessity of *widening* an existing private road, as opposed to *opening* a new private road. After establishing that it had authority to do so, the trial court appointed a board of view and directed the board to conduct a view of the property, hold appropriate hearings and file a written report on whether the proposed widening of the road was necessary to achieve the objectives sought by Reber.[4]

Clara Wolfe and John and Erma Slipp. The land owned by the Detorres is now owned by the Tschudys, and the land owned by Wolfe is now owned by the Bank of Pennsylvania as executor of the estate of Lloyd Cramp. None of the other affected landowners oppose Rebers' widening of the private road, and they are not parties to this appeal.

3. Although four-wheel drive vehicles can navigate the road, it is not without risk to the vehicle's undercarriage and suspension. Moreover, the narrow width of the road prevents vehicles from passing on the road.

4. The trial court appointed the board of view on December 29, 1998. On January 25, 1999, the Tschudys filed preliminary objections to the Second Petition and sought to vacate the order appointing a board of view. On February 8, 1999, the trial court overruled the preliminary objections, but it granted the motion to vacate the order and issued a separate order for the Tschudys to show cause why Reber's Second Petition should not be granted. On December 20, 1999, following the parties' submission of depositions and briefs, the trial court again granted the Second Petition and appointed the board of view. On April 24, 2000, this court denied the Tschudys' request to appeal the trial court's December 20, 1999, order.

Based on its site view and the evidence adduced at the hearings, the board of view issued its report, dated August 23, 2001, and found, *inter alia:* (1) the entire length of the fourteen-foot private road from Reber's property to Route 82 was extremely dangerous because of its surface conditions and, thus, was not adequate; (2) the road's present width must be expanded to twenty-five feet so that erosion can be controlled through the installation of additional drainage pipes and/or storm drains and through the construction and modification of swales and banks; and (3) Reber's objectives cannot be achieved by paving alone and, instead, require performance of all or part of the foregoing findings. Accordingly, based upon absolute necessity, the board of view granted Reber's request to widen the fourteen-foot roadway to twenty-five feet. (*See* Tschudys' brief at Appendix "B.")

On September 21, 2001, the Tschudys filed exceptions to the report, and, after argument, the trial court remanded the case back to the board of view to give the board an opportunity to review the hearing transcripts and reconsider the necessity of widening the road. Following that review, the board of view issued its supplemental report, dated July 13, 2002, in which the board further found, *inter alia:* (1) it is not possible to successfully maintain the existing fourteen-foot road due to steep side slopes on both sides of the road within the first 200 feet and due to varying grades throughout the remaining 1400 feet; (2) the road's present width will not accommodate correction of the existing physical limitations; (3) the plan proposed by the Tschudys' expert witness is not a satisfactory solution to the problems that

presently exist; and (4) it is absolutely necessary to provide areas for the passing of vehicles and emergency vehicles, which can be accomplished only by widening the right-of-way to twenty-five feet. Accordingly, the board of view reaffirmed its prior findings and conclusions. (*See* Tschudys' brief at Appendix "C.")

■ The Tschudys resubmitted their exceptions to the board of view's report and supplemental report, and further argument was held. On September 26, 2002, the trial court issued its decree nisi denying the Tschudys' exceptions and confirming absolutely the report and supplemental report of the board of view. The Tschudys now appeal to this court.[5]

### Jurisdiction

■ Initially, the Tschudys argue that the trial court lacked subject matter jurisdiction over Reber's Second Petition. The Tschudys reason that the issues of the location and dimensions of the private road were specifically raised, fully litigated and finally adjudicated in connection with the parties' litigation on the road's opening under the Act, as a result of which Reber obtained permission to open a fourteen-foot wide private road connecting her property with Route 82. Therefore, the Tschudys contend that Reber's subsequent action to widen the road is barred under the doctrines of res judicata, collateral estoppel and waiver.

■ As to res judicata, the Tschudys maintain that it is of no relevance or distinction that the Second Petition seeks relief under the Act to widen, as opposed to open, the road. The Tschudys remind us

---

5. Appellate review of a trial court's decision regarding a board of view's opening of a private road is limited to ascertaining the validity of the court's jurisdiction, the regularity of the proceedings, questions of law and whether there has been an abuse of discretion. *In re Private Road in East Rockhill Township,* 165 Pa.Cmwlth. 240, 645 A.2d 313 (1994), *appeal denied,* 539 Pa. 698, 653 A.2d 1235 (1994).

that, as in the First Petition, Reber's Second Petition relies on section 11 of the Act to afford access to her land through properties owned by the Tschudys. Because the parties in the present action are the same or in privity with those parties subject to the prior litigation, and because the capacity of the parties in both actions is identical, the Tschudys assert that all of the requisite elements of res judicata have been met.[6]

Similarly, the Tschudys contend that collateral estoppel bars Reber's action under the Second Petition. The Tschudys maintain that because the issue of the width of the private road was fully litigated and finally decided in the 1980 action on the First Petition, Reber cannot re-litigate the parameters of that existing road in a second action.[7]

The Tschudys also maintain that the doctrine of waiver applies here. The Tschudys note that Reber could have sought a twenty-five foot wide road in the First Petition but, instead, requested a fourteen-foot wide road, which is exactly what she received. The Tschudys argue that because Reber accepted that decision without filing any appeal and, in fact, subsequently installed the fourteen-foot wide road without ever challenging the sufficiency of that width, Reber has waived any right to revisit the issue and now claim the need for a twenty-five foot wide road.

In fact, the Tschudys contend that there is no such need and that the existing fourteen-foot wide road still is adequate as a matter of law. The Tschudys point out that, while Reber may have future plans for her property, the property currently remains undeveloped, and, as recently as 2000, the property could be accessed by vehicles with four-wheel drive. Relying on *Application of Little*, 180 Pa.Super. 555, 119 A.2d 587 (1956), for the proposition that the necessity for a private road must be determined on the basis of *present*, rather than contemplated, use of property, the Tschudys claim that, under circumstances as they now exist, Reber cannot establish the *present* need for a wider road.

Contrary to the Tschudys' claim, there is a relevant distinction between the First Petition, in which Reber seeks to *open* a private road under the Act, and the Second Petition, through which she seeks to *widen* the road previously opened. The determination of necessity involves the consideration of different factors in each case. Indeed, the engineering and safety issues addressed in the Second Petition arose only after the original fourteen-foot wide road was constructed and made the need for a wider road evident. In the prior action, Reber had no opportunity to litigate the need for a twenty-five foot road under these changed circumstances, and

---

6. For res judicata to apply to bar an action, there must be a concurrence of four conditions: (1) identity of issues; (2) identity of causes of action; (3) identity of persons and parties to the action; and (4) identity of the quality or the capacity of parties suing or sued. *Ham v. Sulek*, 422 Pa.Super. 615, 620 A.2d 5 (1993).

7. Collateral estoppel, or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated. The doctrine applies when: (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party, or in privity with a party, in the prior case and had a full and fair opportunity to litigate the issue in question; and (4) the determination in the prior proceeding was essential to the judgment. *Consolidation Coal Co. v. Workers' Compensation Appeal Board (Dues)*, 726 A.2d 435 (Pa.Cmwlth.1999).

the original board of view did not adjudicate, or even consider, that question. Therefore, Reber's action is not barred by res judicata, collateral estoppel or the doctrine of waiver. *See Stoneback v. Zoning Hearing Board of Upper Saucon Township*, 699 A.2d 824 (Pa.Cmwlth.1997), *appeal denied*, 552 Pa. 698, 716 A.2d 1250 (1998) (stating that res judicata and collateral estoppel will not bar a subsequent zoning application where there has been a substantial change in the condition or circumstances of the land itself after the initial zoning application was denied).

Moreover, *Application of Little* does not defeat Reber's Second Petition. In that case, the board of view found that the landowner seeking to open a private road already had a sufficient and convenient road for the present use of her land, and this finding was not challenged. Instead, the landowner sought to appropriate another's land for an additional road that would provide more direct access to the highway and make it more convenient to proceed with plans for commercial development of the property. By contrast, Reber does not allege that the present road merely is less convenient to use than it might be, and she does not seek to add a second, alternative route even though a road suited to her needs already exists. Rather, Reber finds herself effectively landlocked again because her only road is not suitable or safe in its present condition to afford her with ingress to and egress from her land. Reber, therefore, seeks to widen the existing road, hoping to use the extra width to install features that will make that road usable once more. *See Lobdell v. Leichtenberger*, 442 Pa.Super. 21, 658 A.2d 399 (1995) (stating that, while mere inconvenience in the use of an exist-

ing road is not enough, a road of limited privilege, that is extremely difficult and burdensome in its use, warrants the appropriation of another more convenient course.)

Alternatively, the Tschudys assert that the plain language of the Act precluded the trial court from assuming subject matter jurisdiction over Reber's Second Petition. According to the Tschudys, application of the Act is limited to *opening* a private road where none previously existed so that there might be ingress to and egress from landlocked parcels. The Tschudys argue that the Act simply does not confer any authority on a trial court to appoint a board of view to *widen* a private road previously created by invocation of the Act. Thus, the Tschudys reason that, having utilized the Act to open a private road connecting her property to a public roadway, Reber cannot return and use the same section of the Act to alter that road so that it is more to her liking. Moreover, the Tschudys reject the trial court's determination that *Brubaker* offers support for Reber's position that the trial court has jurisdiction under the Act to appoint a board of view to consider the necessity of widening an existing private road. Again, we disagree with the Tschudys' argument.

Although the language of section 11 of the Act, 36 P.S. § 2731, does not mention the right to widen an existing private road,[8] there is nothing in the Act that precludes such action, and it only makes sense to allow it. In fact, although the Tschudys argue that Reber cannot petition to widen an existing road, they appear to ignore the fact that, by alleging that the present road was eroded to the point that its continued use was difficult and dangerous, Reber has made allegations sufficient

---

8. We note, however, that in the listing of cross references for the Act, there is reference to section 1 of the Act of May 3, 1855, P.L. 422, 36 P.S. § 1989, which provides authority for the alteration or change of partly opened roads, including private roads.

to warrant appointment of a board of view to determine the necessity of opening an entirely new private road. *See Lobdell; Application of Little.* As Reber points out, if she were forced to pursue this remedy, it likely would result in more damage to the Tschudys' property than simply widening the existing road.

Further, a trial court's authority under the Act to appoint a board of view to widen an existing private road arguably was recognized by implication in *Brubaker*, a case which dealt with, and granted, a petition to widen a private road previously opened under the Act. The Tschudys correctly point out that there are important factual distinctions between *Brubaker* and the present case; nevertheless, we see no real reason why *Brubaker* cannot be used as additional support for the trial court to

accept jurisdiction here, particularly where there is no contrary authority.[9]

### Self-created hardship

■ Assuming that Reber could overcome these jurisdictional bars to her case, the Tschudys next argue that the trial court erred in confirming the board of view's determination that the poor condition of the existing private road was due to its inadequate width, thereby necessitating the widening of the road to twenty-five feet. The Tschudys contend that the source of any difficulty with the road actually lay with Reber herself. The Tschudys maintain that Reber created her own hardship, beginning with the flawed design and construction of the original fourteen-foot wide road and continuing with her failure to undertake reasonable maintenance of that road.[10] The Tschudys analogize this

9. In *Brubaker*, a private road, leading from a farm to a public road, had been established in 1841; although the order was silent as to the width of the private road, it was constructed with a width of thirteen feet. In 1970, 129 years later, the current owners of the farm petitioned for appointment of a board of view; alleging that the road was too narrow to accommodate modern vehicles and farm machinery, they sought to widen the road to twenty-five feet. After being appointed, the board filed a report concluding that the present width of the road was inadequate for modern farm machinery usage and recommended the proposed expansion. The common pleas court confirmed that report, and, following an appeal by the owners of a parcel abutting the private road, this court affirmed.

The Tschudys contend that the trial court's reliance on *Brubaker* is not warranted because, in the present case, Reber herself specifically requested, and received, a fourteen-foot wide road only twenty-one years earlier. Moreover, the modern trend in the last twelve years since the road was opened has been to produce smaller, not larger, vehicles. Finally, the Tschudys correctly note that the issue of whether a private road could be widened after it was opened was never raised or considered in *Brubaker*. Notwithstanding these

distinctions, *Brubaker* arguably could be interpreted broadly to allow for altering an existing private road that, over time, has proved unable to effectively provide ingress to and egress from the landlocked property it purports to serve. In fact, in *Brubaker*, we cite to section 8 of the Act of May 8, 1950 P.L. 713, *as amended*, 36 P.S. § 1988, which specifically grants courts the power to widen public roads, and we apply that section to the widening of a private road. *Brubaker*, 352 A.2d at 567 n. 2.

10. Section 15 of the Act requires that all private roads shall be opened, fenced and kept in repair by and at the expense of the person or persons at whose request they were granted and laid out. 36 P.S. § 2735. The Tschudys contend that Reber failed to consult with a professional engineer or seek the advice of an expert concerning erosion control or water runoff before beginning road construction; instead, she simply allowed an excavator to dig up the property within the stakes set by the surveyor. Further, the Tschudys assert that Reber's only attempt at maintenance was to install gravel which, once it washed away, was not replaced; in fact, Reber made no effort to regrade or pave the road surface even after deep ruts developed when heavy logging equipment used the road.

case to *Graff v. Scanlan*, 673 A.2d 1028 (Pa.Cmwlth.1996), in which this court held that a self-created landlock defeated a finding of strict necessity under the Act, and the Tschudys assert that, because Reber never did anything to prevent or mitigate her problems with the road, she should not now be permitted to remedy her own failings by increasing the width of the road at another's expense. Although we understand the Tschudys' frustration, we cannot accept their position.

In dealing with this argument, the trial court considered the holding in *Graff* and acknowledged the role Reber's poor maintenance played in creating the problems with the existing road. However, the trial court focused on the fact that, whatever the cause, there was no question that the condition of the road made it extremely dangerous and virtually impassable for its entire length, thereby failing to satisfy the very reason for its existence, i.e., necessity. The trial court then reasoned as follows.

> In considering the testimony of the engineers, it appears that the primary cause of the problem was poor design and construction when the private road was first created. While it does appear that Reber did not endeavor to maintain the road, she, nevertheless, would have been fighting a losing battle because the lack of the existence of swales, properly sloped banks, and sufficient piping would have resulted in the storm water runoff and erosion overcoming her maintenance efforts. The road, when constructed in 1990, should have included these important design features to prevent the road from becoming impassable.
>
> The fact that the cause was due to faulty design and construction, not maintenance, means that Reber did not create the necessity to widen the roadway. That necessity always existed, and Reber simply did not sufficiently address the problem in 1990, or for that matter, when she first petitioned the Board of Viewers, for she apparently should have, at that time, requested a roadway wider than fourteen feet (14'). The expansion she seeks simply addresses the necessity as it always existed.

(Trial ct. op. at 19–20.)

In other words, in spite of any failings on Reber's part, the trial court did not think it appropriate to leave Reber completely unable to access her property merely because she asked for something less than adequate to do the job when she first sought that access. We approve and adopt this analysis of the issue. Moreover, in spite of the Tschudys' attempt to analogize *Graff*, we believe that it defeats the purposes of the Act to extend *Graff* to the present situation so as to keep Reber completely landlocked and render her property useless to her.[11] As Senior Judge Silvestri

---

11. In *Graff*, we considered whether a self-created landlock defeats a finding of necessity under the Act as an issue of first impression. In that case, the landowner of nine lots systematically conveyed lots 1–8, all of which had access to a public roadway. Because he sold the lots without reserving an express easement over any of them, he deprived lot 9 of any access to a public road, a situation *wholly* created by his own *voluntary* act. Importantly, the court recognized that, because lot 9 could not be used otherwise, an easement by necessity arose at the time lot 8 was sold. However, in addition, the landowner sought to open a private road under the Act. This the court would not allow, holding that "landowners who *voluntarily* create their own hardship are precluded from condemning a private road over the land of others pursuant to the provisions of the Act." *Id.* at 1033 (emphasis in original). As support for the decision, the court cited a Louisiana case, which subsequently was limited to its facts. "Thus, the Louisiana courts only preclude a landlocked owner from condemning a private right of way over the land of its neighbor where the landowner originally had access to

said in his dissent in *Graff,* "to hold otherwise ... is illogical, absurd and purely punitive since subsequent purchasers with knowledge of the landlocked situation can obtain relief under the Act." *Id.* at 1039.

### Alternative plan

■ Finally, the Tschudys argue that the trial court abused its discretion in confirming the board of view's reports because, contrary to the board of view's determination, it was not absolutely necessary to widen the existing roadway to twenty-five feet along its entire length in order to address drainage, erosion and safety issues. The Tschudys claim that their expert presented a plan addressing all of Reber's concerns and offering a solution to those problems with a less invasive impact on the Tschudys.[12] They point to section 2 of the Act, 36 P.S. § 1785, which requires a board of view to consider the following in laying out a private road: (1) the shortest distance; (2) the best ground; (3) *the manner that*

*would do the least injury to private property;* and (4) as far as practicable, agreeable to the desire of the petitioners.

■ Understandably, the Tschudys focus on the third of these considerations; however, it is only one of four that a board of view must take into account. In laying out a private road under the Act, the location of the road is entirely within the discretion of the board of view. *Holtzman v. Etzweiler,* 760 A.2d 1195 (Pa.Cmwlth. 2000), and this court should not disturb the board's decision absent a manifest abuse of discretion. *In re Forrester,* 773 A.2d 219 (Pa.Cmwlth.2001). Here, the board of view viewed the properties in question and held the appropriate hearings. The board considered both of the plans presented and made findings supported by competent evidence to justify its choice of plan.[13] We see no abuse of discretion by the board of view in accepting the plan of Reber's engineer, which proposes a uniform width of twenty-five feet for the entire road, over

a public road and subsequently, and *voluntarily,* subdivided and sold parcels of its land so as to create a landlock of the land the owner retained." *Id.* at 1034 (emphasis in original). Although *Graff* repeated these facts, the case now before us does not, and, like the case upon which *Graff* relied, we believe that *Graff* should be limited to its facts.

12. The Tschudys suggest that the board of view could have granted easements only in areas where absolutely necessary to resolve the slope stabilization and drainage problems, without letting Reber expand the previously adjudicated easement by eleven feet along the entire road. As to safety concerns, the Tschudys' plan also calls for one strategically placed pull off area so that vehicles could pass each other. The Tschudys seem to say that these easements should be granted under the Eminent Domain Code (Code). However, although proceedings under the Act are in the nature of eminent domain proceedings, the provisions of the Code do not apply to the opening of a private road, and a board of

view may not grant expansion of a private road easement under the Code, as proposed by the Tschudys. *See In re Forrester,* 773 A.2d 219 (Pa.Cmwlth.2001).

13. The parties presented expert testimony in support of their respective positions. Reber presented Alexander O. Jay, a registered surveyor, and James McCarthy, P.E., while the Tschudys presented the testimony of William Witman, P.E. The board of view summarized the evidence presented by each expert and relied on the opinions expressed by Jay and McCarthy that an increase in the width of the private road to twenty-five feet was absolutely necessary to best carry out the objective of eliminating the problems they observed. (*See* Report of Board of View, August 23, 2001, ¶¶ 10b, 11c, Tschudys' brief, Appendix "B" at 4–5.) On the other hand, the board of view determined that Witman's proposal was not a satisfactory solution to Reber's problems. (*See* Supplemental Report of Board of View, July 23, 2002, ¶ 2, Tschudys' brief, Appendix "C" at 3.)

that of the Tschudys' engineer, which also increases the road's width but utilizes varying boundaries and, at points, involves using land beyond twenty-five feet. *See In re Laying Out and Opening a Private Road,* 405 Pa.Super. 298, 592 A.2d 343 (1991) (holding that necessity for a private road exists where a parcel is landlocked, notwithstanding objections from affected landowner that a particular route was not necessary, and, in fact, a different route was more appropriate).

For the foregoing reasons, we affirm.

Senior Judge KELLEY concurs in the result only.

## ORDER

AND NOW, this 15th day of May, 2003, the order of the Court of Common Pleas of Berks County, dated September 26, 2002, is hereby affirmed.