595 A.2d 706

**Margaret L. OLSON, Appellant,**

**v.**

**WHITPAIN TOWNSHIP, Appellee.**

**WHITPAIN TOWNSHIP**

**v.**

**Margaret L. OLSON.**

**Appeal of ROUSE/CHAMBERLIN, INC.**

Commonwealth Court of Pennsylvania.

Argued March 6, 1991.

Decided July 16, 1991.

Reargument Denied Sept 16, 1991.

---

Albert C. Oehrle, Norristown, Jeffrey B. Albert, Philadelphia, for appellants.

J. Pierce Anderson, Plymouth Meeting, for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

COLINS, Judge.

Margaret L. Olson, owner, and Rouse/Chamberlin, Inc., equitable owner, (collectively appellants) appeal an order of the Court of Common Pleas of Montgomery County (trial court) dismissing appellants' preliminary objections to the declaration of taking filed by Whitpain Township (Township) regarding real property located at 1098 Skippack Pike, Blue Bell, Pennsylvania.

On September 5, 1985, the Township, a second class township, filed a declaration of taking regarding 42.7 acres of Olson's property for the purpose of expanding public buildings and parks and creating open space and recreational facilities, including public playgrounds and ballfields. The Township sought to acquire additional recreational property because of its growth and the closing of its Wissahickon Park recreational facility because of asbestos contamination in 1984. Preliminary negotiations between Charles Olson, appellant's husband, and the Township for the sale of the property occurred in 1983. The record indicates that Mr. Olson was originally motivated to sell the property in 1983 because he was aging. However, Mr. Olson's death precluded the signing of an agreement.

On October 4, 1985, Olson's initial preliminary objections to the 1985 declaration of taking were sustained for reasons not relevant to the instant controversy. Next, on May 26,

1988, the Township enacted Ordinance 181, declaring its intention to once again condemn the 42.7 acres of Olson's property, thereby expanding public buildings, parks, open space, and recreational facilities. However, on July 29, 1988, Olson entered into an agreement with Rouse/Chamberlin, Inc. for the sale of 49.9 acres of land, including all of the acres subject to Ordinance 181. This sale was conditioned upon the successful challenge to the condemnation of the property. On October 3, 1988, the Township filed a second declaration of taking regarding Olson's property, and in response, appellants filed preliminary objections, which were dismissed.

The trial court reasoned that the Township had eminent domain power, pursuant to Section 1901 of the Second Class Township Code (Code), which grants townships the authority to acquire property for recreational purposes.[1] Additionally, the trial court found that the appellants failed to show fraud, collusion, bad faith, or arbitrary action by the Township.[2] Therefore, the trial court upheld the declaration of taking.

The issue presented is whether the trial court erred in concluding that the Township has eminent domain authority, pursuant to Section 1901 of the Code,[3] to condemn Olson's property for recreational use. Our scope of review of a trial court's order dismissing a condemnee's preliminary objections "is limited to a determination of whether the court abused its discretion or committed an error of law." *Pidstawski v. South Whitehall Township,* 33 Pa.Commonwealth Ct. 162, 166, 380 A.2d 1322, 1324 (1977). Furthermore, the trial court's conclusions must be

1. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 66901.

2. "Courts cannot interfere with the exercise of the power of eminent domain by an entity possessing such power, in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of discretion." *Speicher Condemnation Appeal,* 58 Pa.Commonwealth Ct. 321, 328, 428 A.2d 282, 286 (1981).

3. 53 P.S. § 66901.

supported by "sufficient competent evidence." *Id.*, 58 Pa.Commonwealth Ct. at 325, 428 A.2d at 285.[4]

■ Preliminarily, we must emphasize that the exercise of eminent domain authority is in derogation of a private citizen's right to hold property; hence, the authority to condemn property in eminent domain must be strictly construed. *Golding Condemnation Case,* 33 Pa.Commonwealth Ct. 635, 382 A.2d 509 (1978). Eminent domain powers arise only when the legislature "points out the occasions, the modes and the agencies for its exercise.... While the right to exercise the power may be delegated, the body to which the power is entrusted has no authority beyond that legislatively granted." *Interstate Cemetery Co. Appeal,* 422 Pa. 594 at 596–598, 222 A.2d 906 at 908–909 (1966).

■ The Eminent Domain Code provides the exclusive procedure governing condemnation of property; the Eminent Domain Code does not "enlarge or diminish the power of condemnation given by law to any condemnor."[5] The Eminent Domain Code does not provide the Township with eminent domain authority in the present case.

We next analyze Section 1901 of the Code,[6] which the trial court held provided the Township with eminent domain

---

**4.** To determine whether the trial court's conclusions are based on "sufficient competent evidence," we examine the evidentiary record created by the trial court. Preliminary objections challenging the condemnor's power to condemn a specific property *must* be decided by the trial court on the basis of an evidentiary record, thereby, resolving questions of fact. *Urban Redevelopment Authority of Pittsburgh v. Thomas,* 92 Pa.Commonwealth Ct. 602, 499 A.2d 1146 (1985); *Conway Appeal,* 60 Pa.Commonwealth Ct. 520, 432 A.2d 276 (1981).

Section 406(a) of the Eminent Domain Code states that preliminary objections are the "exclusive method of challenging ... the power or right of the condemnor to appropriate the condemned property...." 26 P.S. § 1–406(a). Moreover, this section also provides that "if an issue of fact is raised, the court shall take evidence by deposition or otherwise." 26 P.S. § 1–406(e). In accordance with statutory and common law, an evidentiary record was created by the trial court in the present case.

**5.** Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–303.

**6.** 53 P.S. § 66901.

power. Section 1901 of the Code is the source of the Township's authority to acquire property for recreational uses and states in pertinent part:

The supervisors of any township may by ordinance separately or jointly designate and set apart for use as parks, playgrounds, playfields, gymnasiums, public baths, swimming pools, or indoor recreation centers, hereinafter called public parks, recreation areas and facilities, any lands or buildings, owned by such township, and not dedicated or devoted to other public use. Such township may, in such manner as may be authorized or provided by law for the acquisition of lands or buildings for public purposes in such township, acquire lands or buildings therein for any of such purposes or construct and equip new facilities upon such lands or, if there be no law authorizing such acquisition, the township supervisors may acquire lands or buildings for such purposes by gift or purchase, or may lease lands or buildings in such township for temporary use for such purposes. Whenever the supervisors designate or acquire any lands, with or without buildings, under the provisions of this section, except when the acquisition is under a lease for temporary use, they may construct buildings and facilities thereon for the purposes herein indicated.

This section of the Code does not explicitly authorize a second class township to acquire property by eminent domain, unlike other sections of the Code related to roads, drainage, and sewer facilities. For instance, Section 1120 of the Code asserts:

Any township may acquire, by purchase or by the right of *eminent domain,* any such property and lands situate along or adjacent to any township road, as, in the opinion of the supervisors of such township, may be necessary to eliminate dangerous curves and widen narrow roads for the better protection and safety to the traveling public. . . .

53 P.S. § 66120 (emphasis added).

Additionally, Section 1503 of the Code states:

Where it is reasonably impracticable in the judgment of the supervisors in any part of such system to carry such sewers or drains along the lines of public roads, they may locate and construct so much of the same as is necessary through private lands and acquire the necessary land or right of way for such purpose, by gift or by the exercise of the right of *eminent domain.*

53 P.S. § 66503 (emphasis added).

■ Examination of the aforementioned sections of the Code indicates that if the legislature had intended a second class township to have eminent domain authority to acquire property for recreational uses, it certainly could have expressly delegated this authority in the Code. However, Section 1901 of the Code is devoid of such a grant of eminent domain authority, and we, as a Court, cannot imply this power within the statute. Powers of eminent domain must be strictly construed and must be expressly granted or by necessity implied. *Municipal Authority of Zelienople Borough Appeal,* 431 Pa. 306, 245 A.2d 451 (1968).

■ We distinguish the present case from *Speicher,* in which the Court implied the power to condemn property for the purpose of constructing a footpath to prevent school children from walking along U.S. Route 422, a dangerous and busy highway, en route to school. The Code does not expressly grant a second class township the authority to condemn property for a footpath, although Section 702 of the Code [7] grants a second class township the authority to expend money for construction and maintenance of sidewalks and footpaths. However, this Court implied the grant of eminent domain power based upon Section 1404 of the Code which provides:

Whenever it shall appear to the supervisors that any part or portion of any road or highway is dangerous to the traveling public and such danger could be materially reduced or lessened by the construction of a sidewalk or footpath, the supervisors shall have the right to lay out

7. 53 P.S. § 65702.

and construct a sidewalk or footpath along such danger-ous portion of said road or highway of such materials as they shall deem advisable, and to expend moneys from the general fund of the township therefor. In case the highway is a State or county highway, the written con-sent of the Department of Highways or the county com-missioners, as the case may be, shall first be obtained. 53 P.S. § 66404. The Court reasoned that construction of the footpath was necessary to reduce the danger to school children and implied the condemnation power. We cannot imply the eminent domain authority in the present case because no such imminent harm to the public safety exists. Furthermore, there is no evidence of legislative intent indi-cating that a second class township should possess eminent domain authority to condemn property for recreational pur-poses.

The grant of eminent domain power specifically for public highway and sewer purposes would indicate that we must apply the legal maxim *expressio unius est exclusio alteri-us*, "which directs that the mention of a specific matter in a statute implies the exclusion of others not mentioned." *Huffman v. Borough of Millvale*, 139 Pa.Commonwealth Ct. 349, 591 A.2d 1137, 1139 (1991). *See also Samilo v. Insurance Department*, 98 Pa.Commonwealth Ct. 232, 510 A.2d 412 (1986).[8]

If the legislature had intended to grant second class townships eminent domain authority for recreational facili-ties, it could have done so within the statute. Our examina-tion and analysis of the Code finds no such grant. Accord-ingly, we hold that the Township did not have eminent domain power to condemn property for recreational pur-poses.

Hence, we reverse the trial court's order dismissing the preliminary objections of appellants.

8. We will not decide appellants' second issue pertaining to the exces-siveness of the Township's taking in light of our decision that the Township lacked the authority to condemn property for recreational uses by eminent domain.

## ORDER

AND NOW, this 16th day of July, 1991, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is reversed.