**TOWNSHIP OF O'HARA**

v.

**CONDEMNATION OF AN EASEMENT AND RIGHT OF WAY FOR PUBLIC PURPOSES for Use in a Sewer District of a Certain Section of O'Hara Township Designated as "Crawford Lane and Mission Lane Area" in Allegheny County, Pennsylvania, Over Lands of C. Kent and Valerie L. May, Located at Block and Lot No. 358–B– 75**

**Appeal of C. Kent and Valerie L. May.**

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 2004.

Decided Nov. 4, 2004.

Sandy B. Garfinkel, Pittsburgh, for appellants.

Philip J. Weis, Pittsburgh, for appellee.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

C. Kent and Valerie L. May (Condemnees) appeal an Order of the Court of Common Pleas of Allegheny County overruling their preliminary objections to an Amended Declaration of Taking filed by the Township of O'Hara (Township) for property Condemnees own in Fox Chapel Borough (Borough).[1] Condemnees argue that the trial court erred when it found that the Township has the power and authority to condemn property located outside of its municipal borders.

The Borough abuts the eastern portion of the Township along Crawford Lane. Because of this proximity, beginning in 1968, the Borough and the Fox Chapel Sanitary Authority (Authority) entered into a series of agreements with the Township to provide sewage service to 166 existing and 60 future Township properties,[2] and the Township agreed to allow the Borough to connect to the Township's sewers to service 3 Borough properties.[3] Both the Township and the Borough recently realized that additional properties in both municipalities required sewer service.

Accordingly, the Township enacted Ordinance No. 1103, "in the interest of public health," to establish authority for construction of sanitary sewers that would provide service to areas "separated from the others by physical conditions of the terrain." (Ordinance, R.R. at 124a.) The Ordinance specifically designated the "Crawford Land and Mission Lane Area" as a "sewer district," to "include all necessary lands, easements and rights-of-way used and occupied or required for sewer lines and facilities to provide for the sewer system...." (Ordinance § 103, R.R. at 125a.) Condemnees' property was included among others specifically listed in the Or-

1. An appeal may be taken as of right from an order overruling preliminary objections to a declaration of taking. Pa. R.A.P. 311(e).

2. The agreements were dated February 8, 1968, May 12, 1970, April 19, 1971, May 18, 1978, and March 8, 1994, and are not part of the record in this case.

3. The date of this Agreement is August 15, 1994.

dinance as "lands and rights-of-way [that] have not been obtained and, therefore, for which the condemnation and eminent domain proceedings ... will commence to obtain the permanent and temporary easements and rights-of-way ...." (Ordinance § 405; R.R. at 127a.)

Thereafter, the Township and the Borough entered into another agreement (Agreement) permitting the Township to connect to the Borough's sewer by means of the "sewer district" in order to provide sewer service to an additional 26 Township properties and 3 Borough properties. (Agreement, R.R. at 217a.) The Agreement[4] mandated, *inter alia*, that the Township and the Borough were to share the costs of construction of the sewer system in proportion to the number of properties serviced in each municipality.[5] (Agreement, R.R. at 218a, ¶ 2.)

The Township subsequently filed a Declaration of Taking and issued a Notice of Condemnation of Property, in which it "condemned the subject property for use as a sewer district in the interest of the public health." (R.R. at 4a.) Condemnees timely filed Preliminary Objections to Declaration of Taking Raising Questions of Fact. (R.R. at 68a—77a.) Prior to the scheduled hearing on the preliminary objections, the Township filed a Notice to Amend Declaration of Taking (R.R. at 28a—33a) and an Amended Declaration of Taking (113a—115a.) on the same day. The Amended Declaration of Taking made paragraph 3 more specific, and added a new paragraph, (¶ 4), as follows:

3. Said easement and right of way has been condemned pursuant to the provisions of the Home Rule Charter [and Optional Plans Law], 53 [Pa.C.S.] §§ 2901, 2961, and the First Class Township Code, 53 [P.S.] § 56901, ... 57401, 57401.1, 57402, 57403, and 57404.[6]

4. The condemned parcel also includes a portion of land that is located in Fox Chapel Borough, and is also authorized under 53 P.S. §§ 2201, 2202,[7] 2331;[8] 1998, Dec. 3, P.L. 931, No. 119, § 1, and Ordinance No. 1103. Authority for this condemnation also exists pursuant to [Section 2440 of the Township Code,] 53 P.S. § 57440 and an agreement between the Township of O'Hara and Fox Chapel....

(R.R. at 113a–114a) (footnotes added). Condemnees again filed Preliminary Objections, which the trial court overruled after argument. The trial court found, *inter alia*, that the Borough "specifically agreed to the condemnation by the August 18, 2003 agreement with the Township of O'Hara." (Slip op. at 4), and that the effect of the parties' Agreement satisfied the "contract" requirement articulated in Section 2403 of the Township Code, 53 P.S. § 57403. The court also found that the Borough had "acquiesced" in the condemnation because it knew the condemnation proceedings were occurring, did not object to the taking, and failed to intervene to prevent the taking of property within its

4. This agreement is dated August 18, 2003.

5. Cost was defined to "include construction and engineering costs plus costs of right-of-way acquisition less a portion of any grant the Township receives...." (Agreement, R.R. at 218a, ¶ 2.)

6. These are citations to The First Class Township Code (Township Code), Act of June 24,

1931, P.L. 1206, *as amended*, 53 P.S. §§ 55101–58502.

7. Act of April 10, 1905, P.L. 125, 53 P.S. §§ 2201, 2203.

8. Act of July 17, 1901, P.L. 668, *as amended*, 53 P.S. §§ 2331–2332.

borders. Condemnees timely filed an appeal to this Court.

On appeal, Condemnees present two issues for our review:[9] (1) whether the Township is without the power and right to condemn any portion of their property because it is located entirely outside the Township's borders; and (2) whether the Amended Declaration of Taking fails to comply with specific requirements of the Eminent Domain Code (Code).

■ Our standard of review of a trial court's order dismissing preliminary objections in an eminent domain matter is limited to determining whether the trial court abused its discretion or committed an error of law. *In re Condemnation of Penn Township*, 702 A.2d 614 (Pa.Cmwlth.1997).

First, Condemnees argue that the Township is without the power and authority to condemn any portion of their property because it is located entirely outside the Township's borders. They claim that Section 2440(d) of the Township Code, 53 P.S. § 57440(d), specifically confirms and supports this argument. The Township, on the other hand, contends that Condemnees' reliance on this Section is misplaced because it refers to joint sewer systems, which this proposed system is not. Rather, the Township argues that Section 2403 of the Township Code, 53 P.S. § 57403, which authorizes a municipality to enter into contracts with adjoining municipalities in order to take property outside its borders for construction of sewer systems, is the section that controls here.

■ Preliminarily, we recognize that the authority to condemn property in eminent domain must be strictly construed. *Olson v. Whitpain Township*, 141 Pa.Cmwlth. 270, 595 A.2d 706, 708

(1991). Eminent domain powers arise only when the legislature "points out the occasions, the modes and the agencies for its exercise.... While the right to exercise the power may be delegated, the body to which the power is entrusted has no authority beyond that legislatively granted." *Interstate Cemetery Company Appeal*, 422 Pa. 594, 596–98, 222 A.2d 906, 908–09 (1966). Section 303 of the Eminent Domain Code provides "the exclusive procedure governing condemnation of property;" however, it does not "enlarge or diminish the power of condemnation given by law to any condemnor." 26 P.S. § 1–303; *see also Olson*, 595 A.2d at 708.

The Pennsylvania Legislature has granted the right to exercise the power of eminent domain to first class townships pursuant to Section 1901 of the Township Code. That Section provides, in pertinent part: "In ... the construction of ... sewers ... a township of the first class may enter upon, appropriate, injure or destroy private lands, property and material." 53 P.S. § 56901. The Township has the explicit power and the right to condemn property; the question remains as to whether such power allows it to reach beyond its own borders.

■ Condemnees rely upon Section 2440 of the Township Code, which provides for "Building Joint Sewers," to support their argument that the Township has no power to condemn property outside its municipal borders. Section 2440 provides, in pertinent part:

(a) Townships may jointly with cities, boroughs or other townships build and construct sewers, ... and may connect into such system existing

---

**9.** We have combined Condemnees' second and third issues because both concern the Township's compliance with requirements of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101–1–903.

sewers, and may assess their respective portions of the cost thereof. . . .

. . .

(d) In any case where it shall be necessary to acquire, appropriate, inquire, or destroy private property, lands, property, or material to build any such joint sewer improvement, and the same cannot be acquired by purchase or gift, the right of eminent domain shall vest in the township, city, or borough *where such property is located* . . . .

53 P.S. § 57440 (emphasis added). This Section of the Township Code applies only where municipalities are involved in joint sewer projects. Condemnees have not provided this Court with any evidence that the planned expansion of the Township's and Borough's sewers constitutes a joint sewer system or improvement. There is no evidence in the record, and no argument made, that the Authority is managed by a joint sewer board, pursuant to the provisions in Section 2440 of the Township Code, 53 P.S. § 57440(b) and (c) (allowing for appointment of joint sewer board composed of one representative from each township, city and borough joining in the project, to act as advisory and administrative agency for construction, operation and maintenance of sewer system, which has authority to adopt rules and regulations governing its proceedings and future plans for construction). Nor is there any evidence or argument that the proposed additions to the sewer system will be jointly owned or operated. To the contrary, there is evidence that the sewer belongs solely to the Borough ("the TOWNSHIP desires to connect to the *BOROUGH's sewer.*") (Agreement, p. 1, R.R. at 217a)(emphasis added.) The Township and the Borough share only in the costs of construction of these sewer lines "in proportion to the number of properties in each municipality served by each segment of said sewer." (Agreement ¶ 2, R.R. at 218a.) However, the individual sewer lines "constructed under this Agreement shall be owned, operated and maintained by the TOWNSHIP except [one particular sewer] which shall be owned, operated and maintained by the Borough." (Agreement ¶ 3, R.R. at 218a.) *All plans for construction and all work performed must be inspected by and approved by the engineer for the Borough.* (Agreement ¶ 4, R.R. at 218a). Therefore, because of the separate ownership, operation and maintenance of the sewer lines, and the lack of any evidence indicating that these are "joint sewers" under Section 2440 of the Township Code, 53 P.S. § 57440, we agree with the Township's description as a "cooperative effort between two municipalities," and not a joint sewer system or improvement and, so, do not apply that section.

■ Rather, as argued by the Township, we believe that Section 2403 of the Township Code is the applicable provision. This Section states:

The commissioners shall make the necessary provisions for the disposition of the sewage and drainage within, or for carrying the same beyond, the limits of the township; and, to this end, they are hereby *authorized to enter into contracts with other municipalities and other corporations or person, to purchase, acquire, enter upon, take, appropriate, occupy, and use such lands, rights, and interests therein, within the corporate limits of other townships or boroughs, as shall be necessary* for the proper location, construction, maintenance, use and operation of sewer mains, drains, or treatment works. . . .

53 P.S. 57403 (emphasis added).

The trial court applied this provision and determined that the Borough agreed to the taking pursuant to the Agreement,

which acknowledged right-of-way acquisitions as part of the sewer system project, and is supported by the Borough's failure to object or to intervene in the eminent domain proceedings. The trial court correctly noted that the Agreement does not specifically reference "eminent domain" or condemnation powers. However, as also correctly described by the trial court, the Agreement does specifically agree to the construction of new Township sewers that will serve 26 Township properties and 3 Borough properties, and connect to the Borough sewer system. The Agreement describes the system, and, in Section 2, provides for the sharing of costs, including the costs to acquire "rights-of-way." This is the same sewage system described in the Township Ordinance enacted prior to the execution of the Agreement. Article IV of the Ordinance specifically listed the property of the Condemnees.

As they did before the trial court, Condemnees argue here that the Agreement does not satisfy the contract requirement in Section 2403 because it fails to expressly recognize the right of the Township to condemn property outside its municipal borders. Condemnees argue that "nowhere in the agreement is there any language that, either expressly or impliedly, recognizes the right of [the Township] to condemn property which falls within the borders of the Borough.... In fact, the agreement does not speak of condemnation at all." (Condemnees' Br. at 12.)

Thus, the issue we must decide is whether, to be effective, an agreement between two municipalities must include specific reference to eminent domain in order to come within Section 2403 of the Township Code. Condemnees cite no authority to support their argument that a contract

must include those specific words; in fact, Section 2403 of the Township Code does not specifically include the words "eminent domain." That section refers to the means by which township commissioners could "purchase, acquire, enter upon, take, appropriate, occupy, and use such lands, rights, and interests ... within the corporate limits of other townships or boroughs" as necessary "for the proper location, construction, maintenance, use and operation" of necessary sewage and drainage systems. 57 P.S. § 57403. The specific words that Condemnees argue must be in the contract are not even in that section of the statute.

We agree with the trial court that, even though the Agreement does not explicitly authorize eminent domain procedures,[10] it is clear from the notices, declarations, the Ordinance and the Agreement that the Township and the Borough anticipated and required the condemnation in order to effectuate the purposes of the Agreement. There was no other way that the Township could acquire the rights-of-way necessary to build its sewer to provide service to Borough residents, and to connect to the Borough's sewer system without going outside of its boundaries. Thus, by signing the Agreement, the Township and the Borough agreed that the Township could take property within the Borough as necessary for the implementation of the proposed sewer system for the benefit of both the Borough and the Township.

 Where a party challenges the condemning authority's right or power to condemn property, the burden is on the party opposing the condemnation to show that the decision was arbitrary, fraudulent, or an abuse of discretion. *Simco Stores v. Redevelopment Authority of City of Phila-*

---

10. The Agreement between the Township and the Borough addresses the provision of sewer services to properties in *both* the Township

(26) and the Borough (3), and references necessary construction to take place in *both* municipalities. (R.R. at 119a.)

*delphia,* 455 Pa. 438, 317 A.2d 610 (1974). This is an extremely heavy burden. *Appeal of Spory,* 54 Pa.Cmwlth. 17, 419 A.2d 804, 806 (1980). We conclude that Condemnees have not met their burden here.[11]

■ Condemnees' second issue requires us to determine whether the Township's Amended Declaration of Taking fails to comply with the requirements of the Eminent Domain Code. They assert that the Declaration violates Section 402(b)(2), (b)(3) and (b)(5) of the Eminent Domain Code, 26 P.S. § 1–402(b)(2), (b)(3) and (b)(5), and fails to indicate that it is attempting to take a portion of a Scenic Conservation Easement reserved and dedicated to the Borough. The Township counters that the Amended Declaration of Taking properly meets all requirements of both the Eminent Domain Code and the Township Code.

Section 402(b) of the Code provides, in pertinent part:

. . .

(b) The declaration of taking shall be in writing and executed by the condemnor, shall be captioned as a proceeding in rem, and shall contain the following:

. . .

(2) A specific reference to the statute, article and section thereof under which the condemnation is authorized.

(3) A specific reference to the action, whether by ordinance, resolution or otherwise, by which the declaration of taking was authorized, including the date when such action was taken, and the place where the record thereof may be examined.

. . .

(5) A description of the property condemned sufficient for the identification thereof, specifying the city, borough, township or town and the county or counties wherein the property taken is located, a reference to the place of recording in the office of the recorder of deeds of plans showing the property condemned or a statement that plans showing the property condemned are on the same day being lodged for record or filed in the office of the recorder of deeds in such county in accordance with section 404 of the act.

26 P.S. § 1–402(b).

Our review of the record and the cited authority confirms that the Amended Declaration of Taking complies fully with these specific provisions of the Code. As previously discussed in the Amended Declaration of Taking, the Township made specific reference to applicable statutes under which the condemnation is authorized, thus meeting the requirements of Section 402(b)(2) of the Eminent Domain Code, 26 P.S. § 1–402(b). In the Amended Declaration, the Township also referenced its own Ordinance No. 1103, by which the Declaration of Taking was authorized, the date when the action occurred, and a place where the record may be examined. Further, the Township provided a detailed description of Condemnees' property, including the township and borough of the taking, a plan showing a metes and bounds description, and a deed for the property.

We also agree with the Township that, although a Scenic Conservation Easement held by the Borough is identified in the plans attached to the Amended Declara-

---

11. Because we find the Township successfully established that it possesses statutory authority for the condemnation *sub judice* pursuant to Section 2403 of the Township Code, it is unnecessary for us to address other statutory authority cited by the Township for the same proposition.

tion of Taking, the Borough, nonetheless, agreed to the installation of the sanitary sewer system and, therefore, the Township is not taking any portion of the condemned property without the explicit permission of the Borough.

For the foregoing reasons, we affirm the order of the trial court.

### ORDER

**NOW,** November 4, 2004, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby AFFIRMED.