MIDDLETOWN TOWNSHIP

v.

The LANDS OF Josef Seegar STONE, Executor of the Estate of Sara Seegar Stone, Deceased, Josef Seegar Stone and Francine Lida Stone, Executors of the Estate of Ezra C. Stone, a/k/a Ezra Stone, Deceased and Josef S. Stone and Francine Lida Stone

Appeal of: Josef Seegar Stone Individually, and as Executor of the Estate of Sara Seegar Stone, and as one of the Estate of Ezra C. Stone.

Middletown Township

v.

The Lands of Josef Seegar Stone, Executor of the Estate of Sara Seegar Stone, Deceased, Josef Seegar Stone and Francine Lida Stone, Executors of the Estate of Ezra C. Stone, a/k/a Ezra Stone, Deceased and Josef S. Stone and Francine Lida Stone

Appeal of: Francine Lida Stone.

Commonwealth Court of Pennsylvania.

Argued June 6, 2005.

Argued Sept. 13, 2005.

Don F. Marshall, Newtown, for appellant, Josef Seegar Stone.

Gregg I. Adelman, Blue Bell and Stephen H. Green, Philadelphia, for appellee, Francine Lida Stone.

David F. Conn, Trevose, for appellee, Middletown Township.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

This case, which is before the Court a second time, involves a 175–acre farm in Bucks County (Property). The Property was partitioned by stipulated order filed in 1998. During a delay in the approvals and filings contemplated by the stipulated partition order, Middletown Township (Township) condemned the Property.

Currently, there are appeals from three different orders of the Court of Common Pleas of Bucks County (trial court) in the condemnation action. Francine Lida Stone (Francine) appeals two orders: an October 4, 2002 order determining the effect of the stipulated partition on the subsequent condemnation case; and, a May 9, 2003 order declining to reconsider the October 2002 order. Josef Seegar Stone (Josef) appeals a September 28, 2004 order overruling his Preliminary Objections to the Township's Declaration of Taking. Because Francine appeals two unappeala-

ble orders, we quash her appeal. Because we discern no error, we affirm the trial court in Josef's appeal.

The partition action was brought by Josef seeking to partition the Property. By stipulation, a judge sitting in orphans' court ordered the Property partitioned in October 1998. That order stated the Property, "is ORDERED to be partitioned by and between the respective co-tenants whose undivided fee simple interests are as follows: Estate of Ezra Stone 44% Francine Lida Stone 28% Josef Seegar Stone 28%". Reproduced Record (R.R.) at 22a. Further, the Estate was ordered to file a subdivision plan with the Township, and upon approval of the plan all parties were to cause Parcels A and D (as depicted on an exhibit attached to the stipulation) to be conveyed to the Estate, Parcel B to be conveyed to Francine, and Parcel C to be conveyed to Josef. No appeal was taken from this order.

Almost two years later, the Estate submitted its subdivision plan to the Township for approval at its September 12, 2000 meeting. Two weeks after submission but before approval, the Township filed a Declaration of Taking to take the entire Property under the Eminent Domain Code[1] and The Second Class Township Code (Township Code).[2] The Township approved the subdivision plan the next month, in October 2000.

No appeal was taken from approval of the subdivision plan. However, both Josef and Francine filed Preliminary Objections to the Declaration of Taking. Francine withdrew her Preliminary Objections in October 2001.

In October 2002, a different trial judge entered a preliminary order determining the effect of the 1998 stipulated partition order on the condemnation action. Essentially, the trial court recognized the unappealed partition order as effective despite the delay in the parties' compliance with it, and the trial court directed the parties to complete the process set forth in the stipulated partition order. This order is the subject of Francine's appeals.

Francine appealed the October 2002 order to this Court. A single judge of this Court quashed the appeal on the basis that the October 2002 order was a non-final preliminary order determining the effect of the October 1998 partition order. It was not appealable because the October 2002 order did not put Francine out of court in the condemnation case. *Stone v. Middletown Township*, No. 2630 C.D.2002, 818 A.2d 606 (Pa.Cmwlth. February 21, 2003).

Upon return of this matter to the trial court, Francine sought reconsideration of the October 2002 order. The trial court declined to do so by order of May 2003.

In September 2004, the trial court overruled Josef's Preliminary Objections.[3] It is from this September 2004 order that Josef now appeals to this Court.[4] Francine, while maintaining her

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101—1–903.

2. Act of May 1, 1933, P.L. 103, reenacted and amended by Act of July 10, 1947, P.L. 1481, *as amended*, 53 P.S. §§ 65101–68701.

3. Preliminary objections in eminent domain proceedings are different from those in other proceedings. Preliminary objections are the sole method by which a condemnee may challenge the declaration of taking. Section 406 of the Eminent Domain Code, 26 P.S. § 1–406(a). If factual issues are raised by the preliminary objections, the court takes evidence by depositions or otherwise to resolve those issues. 26 P.S. § 1–406(e).

4. "In eminent domain proceedings, where a trial court has either sustained or overruled her

appeal is timely as to the September 2004 order, does not appeal the September 2004 order. Rather, she appeals only the October 2002 and May 2003 orders.

## I. Francine's Appeal

Francine generally opposes distribution of just compensation according to the stipulated, unappealed 1998 partition order. She argues that the Township's taking rendered the subsequent subdivision void. Without explanation, she also argues that just compensation should be distributed as set forth in a will, without the passing of title described in the stipulated 1998 partition order. These substantive arguments need not be reached now, however, because neither the October 2002 order nor the May 2003 reconsideration order is appealable.

 Francine argues she is entitled to appeal now because the trial court in the condemnation case was not sitting as the orphans' court, and it therefore lacked subject matter jurisdiction to enter the October 2002 order. She relies on cases holding that subject matter jurisdiction may be raised at any time, even on appeal, and is not waivable.

 Francine's argument ignores this Court's prior determination that the October 2002 order is not appealable. Issues of subject matter jurisdiction are not waivable, but that does not change the law defining which orders may be appealed. Regardless of the jurisdiction argument, this Court's prior determination is res judicata [5] that the October 2002 order is not appealable as a final order.[6]

 Francine argues this Court's prior determination gave her no other route to appellate review than to wait for a final order to be issued. Francine argues, because the September 2004 order overruling Josef's preliminary objections is such a final order, and because she filed her appeal timely with respect to a final order, her appeal is timely.

This argument lacks merit, because Francine does not appeal the September 2004 order. Indeed, as she withdrew her preliminary objections to the taking, she is not aggrieved by that order disposing of preliminary objections. Also, the orders Francine attempts to appeal do not deal with the subject matter of the preliminary objections, the Township's authority to condemn.

Francine argues the court decisions leave her without any remedy. We disagree. She contests the anticipated manner of distribution, which will be consistent with the stipulated partition order and the approved subdivision. She may appeal any future order setting forth an amount of just compensation and the distribution of that amount. At that time, any questions about preclusion can be addressed.

---

preliminary objections to a declaration of taking, this Court's scope of review is limited to determining whether the trial court abused its discretion or committed an error of law." *Nicoletti v. Allegheny County Airport Auth.,* 841 A.2d 156, 159 n. 5 (Pa.Cmwlth.2004).

**5.** For res judicata to apply, "there must be a concurrence of four conditions: (1) identity of issues; (2) identity of causes of action; (3) identity of persons and parties to the action; and (4) identity of the quality or the capacity of parties suing or sued." *Reber v. Tschudy,*

824 A.2d 378, 382 n. 6 (Pa.Cmwlth.2003). Here, those conditions exist, as the exact party is attempting to appeal the exact order previously ruled unappealable.

**6.** Likewise, Francine's appeal of the May 2003 order is quashed as not reviewable on appeal. The May 2003 order denied reconsideration of the October 2002 order. It is well-settled that orders denying reconsideration of a prior order are not appealable. *Thorn v. Newman,* 113 Pa.Cmwlth. 642, 538 A.2d 105 (1988).

Ultimately, because Francine appeals from two unappealable orders, we quash her appeal.

## II. Josef's Appeal—Township's Lack of Authority

Josef raises numerous arguments that the Township was without authority to condemn the Property.

■ A. Josef first argues the Township exceeded its statutory authority by condemning the Property under the guise of a "recreational" purpose because the true purpose is to prevent development. Josef acknowledges that the Township Code empowers the Township to acquire land by eminent domain for recreational purposes.[7] Indeed, the Declaration of Taking states the purpose of the taking is, "to acquire a fee simple interest to the [Property] for recreation and open space purposes pursuant to the [Township Code]."

Josef argues, however, this stated purpose was a smokescreen, and "overwhelming evidence" demonstrates the true purpose behind the condemnation was to prevent development.

The trial court concluded the evidence established the Township acquired the Property for recreational purposes. The trial court pointed to a 1991 Recreation, Parks and Open Space Plan and a 1998 Addendum to that plan that identified the Property as a target for recreational uses. The 1998 Addendum stated the Property was a target due to its "agricultural, environmental and *potential recreational* character." R.R. at 174a (emphasis added). The Property was determined to have "cultural and recreational" value, and to be suitable for multiple uses. R.R. at 181a. The Property was targeted for acquisition

within five to ten years, with a notation that significant funding "may be required to develop park and open space infrastructure that will *enhance the recreational opportunities* of residents" on the Property. R.R. at 184a (emphasis added).

The trial court also pointed to various witnesses who testified it was the Township's long-range goal to acquire the Property for recreational purposes. Joseph Wenda, former member of Township's Board of Supervisors, testified it was his understanding that the Property was identified for "Park and Rec [*sic*]" purposes. R.R. at 115a. Wenda testified the Property was considered because it is located next to an existing park, and the Property would be a natural extension of that park. R.R. at 140a. Wenda stated the Property had recreational value and was condemned to preserve the Property for park and recreation use. R.R. at 140–41a.

Mel Kardos, a member of Township's Board of Supervisors, testified he wanted the Property preserved for "open space and recreational purposes." R.R. at 96a. Kardos stated, "[W]e didn't want it [the Property] to be developed. We like it to be a farm on the one hand, which could be used as passive recreation. On the other hand, it's right next to Core Creek Park, which I know Commissioner Fitzpatrick wanted to acquire this so he could extend the Celebration of Lights so we could have an entrance to go across the front of the park. . . ." R.R. at 102a. Kardos testified, since the condemnation, the Property has been used for recreational purposes, including hayrides, picking pumpkins, picking crops, and school trips to learn how a working farm operates. R.R. at 104a–05a.

---

7. Section 2201 of the Township Code, as re-enacted and amended by the Act of November 9, 1995, P.L. 350, 53 P.S. § 67201.

██ The trial court did not err. This Court recognizes a public park as a proper recreational use. *In re Condemnation of Lands of Laughlin,* 814 A.2d 872 (Pa. Cmwlth.2003). The evidence supports the finding that the Township condemned the Property for recreational uses. In particular, two witnesses testified to a use of the Property as an extension of an existing, adjacent public park. Also, use of the Property for future recreational purposes was part of an established long-term plan. As the trial court pointed out, "Although condemnation of the property for the intended recreational purposes may have the inevitable consequence of preservation, this does not invalidate the taking."[8]

██ B. Josef next argues the Township exceeded its statutory authority by exercising its power of eminent domain for "open space" purposes. Josef relies on what is commonly known as the Open Space Lands Act.[9] That statute prohibits local government units other than counties or county authorities from using eminent domain to carry out its provisions. Section 8 of the Open Space Lands Act, 32 P.S. § 5008(b). Josef argues the Township's condemnation of the Property, done for preservation of open space, violates this proscription.

Resolution of this issue of first impression requires analysis of both the Open Space Lands Act and the Township Code. The former restricts the use of eminent domain by townships in certain circumstances, and the latter specifically authorizes the use of eminent domain by townships in certain circumstances.

The Open Space Lands Act specifically prohibits townships from using eminent domain to carry out its provisions. Section 2 of the Open Space Lands Act defines "open space benefits" as including, among other things, "(iii) the protection and conservation of farmland; (iv) the protection of existing or planned park, recreation or conservation sites . . . ." 32 P.S. § 5002(1). The Open Space Lands Act provides for acquisition of property interests for open space benefits by certain government units (Section 5 of the Open Space Lands Act, 32 P.S. § 5005), but specifically prohibits any government unit other than counties or county authorities to, "exercise the power of eminent domain in carrying out the provisions of this act." 32 P.S. § 5008(b).

The Open Space Lands Act contains certain procedures which must be followed by local government units. For example, review procedures must be established by ordinance or resolution. Section 7.2 of the Open Space Lands Act, added by the Act of December 18, 1996, P.L. 994, 32 P.S. § 5007.2. No property interests shall be acquired by a local government unit unless the property has been designated for open space uses in a plan recommended by the appropriate planning commission and approved by the governing body. Section 3 of the Open Space Lands Act, 32 P.S. § 5003. Prior to acquisition of property interests, notice must be given and a public hearing held. Section 6 of the Open Space Lands Act, 32 P.S. § 5006. Also, where, as here, a fee simple interest is sought by a local government unit, the property shall be offered for public resale within two years of acquisition, subject to restrictive covenants or easements discussed at the public hearing. Section 7 of the Open Space Lands Act, 32 P.S. § 5007.

In contrast, Section 2201 of the Township Code states,

---

8. Trial Ct. Op. at 6.

9. Act of January 19, 1968, P.L. (1967) 992, *as amended,* 32 P.S. §§ 5001–5013.

The board of supervisors may designate lands or buildings owned, leased or controlled by the township for use as *parks,* playgrounds, playfields, gymnasiums, swimming pools, indoor recreation centers, *public parks and other recreation areas and facilities* and acquire lands or buildings by lease, gift, devise, purchase or *by the exercise of the right of eminent domain* for recreational purposes and construct and equip facilities for recreational purposes.

53 P.S. § 67201 (emphasis added).

The history of the Township Code reveals the General Assembly's intent to authorize second class townships' use of eminent domain to acquire property for recreational purposes. Prior to 1995, the Township Code permitted second class townships to acquire lands for recreational purposes in any manner provided by law, but did not specifically permit such acquisition by eminent domain. Section 1901 of the Act of May 1, 1933, P.L. 103, as it existed prior to reenactment and amendment by the Act of November 9, 1995, P.L. 350. As a result, this Court concluded a second class township was without authority to condemn property for recreational purposes, stating,

> [I]f the legislature had intended a second class township to have eminent domain authority to acquire property for recreational uses, it certainly could have expressly delegated this authority in the Code. However, Section 1901 of the Code is devoid of such a grant of eminent domain authority, and we, as a Court, cannot imply this power within the statute.

*Olson v. Whitpain Township,* 141 Pa. Cmwlth. 270, 595 A.2d 706, 709 (1991).

However, in 1995, the Township Code was reenacted and amended, with the new Section 2201 specifically granting second class townships the right to acquire property by eminent domain for recreational purposes. 53 P.S. § 67201. Thus, it is clear the General Assembly intended second class townships to acquire property for recreational purposes by eminent domain.

In this case, the Township relied on the Township Code, not the Open Space Lands Act, for the authority to exercise eminent domain. *See* R.R. at 24a, Declaration of Taking, stating, "These Condemnation proceedings are brought pursuant to the authority contained in the Pennsylvania Eminent Domain Code, 26 P.S. § 1–101, and as set forth under the Second Class Township Code, Act of May 1, 1933, P.L. 103, as amended, 53 P.S. § 65101, et seq."; R.R. at 27a, Resolution No. 00–28R, stating, "the Board of Supervisors of the Township of Middletown, County of Bucks, Commonwealth of Pennsylvania is empowered to acquire the necessary private land for recreational and open space purposes, pursuant to the Second Class Township Code, Act of May 1, 1933 P.L. 103, as amended, 53 P.S. Section 65101...." Further, there is no showing that the Township followed any of the procedures required by the Open Space Lands Act. Also, there is no suggestion that the Township claimed authorization under the Open Space Land Act.

The Open Space Lands Act only forbids the Township from exercising eminent domain "in carrying out the provisions of this act." The Township, however, did not exercise eminent domain to carry out the provisions of the Open Space Lands Act, but rather exercised its eminent domain power under the Township Code. Because the Township did not proceed under the Open Space Lands Act, the restrictions of that statute do not apply here.

We previously determined the Township properly exercised eminent domain to take the Property for recreational purposes un-

der the Township Code. We therefore conclude the trial court did not err in overruling Josefs preliminary objection based on the Open Space Lands Act.

C. Josef next argues the Township did not intend to use the Property for a valid public purpose within a reasonable time frame and attempted to take more land than necessary to effectuate its purpose. Josef argues, in the four and one-half years since the condemnation, there are no plans developed or funds set aside to use the Property for any recreational purpose.

Josef did not raise this issue in his preliminary objections and, therefore, the argument is waived. "Section 406 of the Eminent Domain Code is very specific in that failure to raise challenges in the preliminary objections at one time results in a waiver of those challenges." *In re Condemnation of Certain Properties and Property Interests for Use as Public Golf Course,* 822 A.2d 846, 851 (Pa.Cmwlth. 2003). Where Josef did not present this objection to the trial court for disposition, there was no preliminary objection for the trial court to sustain regarding this argument. *Id.*

### III. Josef's Appeal—Declaration and Notice Defects

Josef next argues both the Declaration of Taking and the Notice of Filing of Declaration of Taking are deficient in a number of ways. Josef argues the Declaration is defective for failing to specifically reference the statutory authority for the taking, for insufficient recital of the purpose of the condemnation, for failing to caption the proceeding as "in rem," and for filing against the Estate of Sara Seegar Stone, an entity with no interest in the Property. Josef argues the Notice is defective for failing to specifically reference the statutory authority for the taking and

for failing to describe the purpose of the taking.

Although Josef makes the bare claim that these technical deficiencies caused prejudice, he did not aver any prejudice in his preliminary objections, nor does he specify prejudice on appeal. The trial court concluded Josef did not allege prejudice and, therefore, the condemnation would not be set aside.

The trial court did not err. As this Court recently noted,

Procedural irregularities, however, will not set aside a condemnation decision where the condemnee has not been prejudiced. *Avery v. Commonwealth,* 2 Pa. Cmwlth. 105, 276 A.2d 843, 844 (1971). In *Avery,* the appellants challenged a condemnation because the notice from the Department of Forests and Waters failed to state that some of the land to be condemned was located in townships other than the township identified in the notice, and an oral, as opposed to written, approval to the project was given by the Secretary of Forest and Waters. This Court held that the Department had substantially complied with the notice and authorization procedures, and thus, the doctrine of strict construction of the Code should not apply. In *Avery,* Appellants attended the hearings, were fully aware of the Department's intentions with respect to their property, and were not misled in any material way.

This reasoning was also followed in *In re Lands of Patterson,* 722 A.2d 1176 (Pa. Cmwlth.1999), where the condemnor used the language of Pa. R.C.P. 1018.a (notice to defend) rather than that language required by Section 405(c)(12) of the Code in its declaration of taking. This Court held that although the notice did not inform the condemnee that she had to file preliminary objections, she

was not prejudiced because she had, in fact, filed preliminary objections and participated in the proceeding. Thus, these pleadings did not provide a basis to set aside a condemnation.

Here, although the Declaration of Taking was not served on the unit owners, they were not prejudiced. Each unit owner filed preliminary objections to the Declaration of Taking and petitioned the trial court to appoint a Board of Viewers. Furthermore, each unit owner had an opportunity to participate fully in the condemnation process.

[The condemnee] has failed to show any error by the trial court by failing to sustain its preliminary objections to DOT's Declaration of Taking on grounds of procedural irregularities. Irregularities which were limited to the service did not prejudice [the condemnee] in pursuing its claim of a *de facto* condemnation. Thus, [the condemnee's] preliminary objections on the basis of procedural irregularities were properly overruled.

*In re Condemnation by Dep't of Transp. of Right-of-Way for State Route 0079, Section 290, a Limited Access Highway in Township of Cranberry*, 805 A.2d 59, 67–68 (Pa.Cmwlth.2002).

Josef did not assert to the trial court that any deficiencies caused prejudice. Similarly, Josef does not specify prejudice in his written argument to this Court. This is not surprising, as it is hard to imagine what prejudice could arise from these technical deficiencies. Accordingly, the trial court did not err in overruling these preliminary objections.

### IV. Josef's Appeal—One Declaration of Taking with Multiple Owners

█ Finally, Josef argues the Township erred in filing one Declaration of Taking where there were multiple properties with different owners. However, Josef did not raise this issue in his preliminary objections. Therefore, it is waived. *In re Condemnation of Certain Properties and Property Interests for Use as Public Golf Course.*

For all the foregoing reasons, we quash Francine's appeal and affirm the order of the trial court in Josef's appeal.

### *ORDER*

AND NOW, this 15th day of September, 2005, in No. 2152 C.D.2004, Appeal of Josef Seegar Stone, the order of the Court of Common Pleas of Bucks County is **AFFIRMED**.

In No. 2298 C.D.2004, Appeal of Francine L. Stone, the appeal is **QUASHED** again.

DISSENTING OPINION BY President Judge COLINS.

I first wish to commend the majority opinion writer for his scholarly, thorough, yet concise, treatment of the complex issues in the instant matter.

However, I must dissent insofar as the opinion affirms the trial court's order overruling the preliminary objections of Josef S. Stone. As noted by the majority, the initial Declaration of Taking stated, *inter alia,* that the taking was to acquire "recreational and open space."

Since the Township has admitted that one of the major purposes of the Taking was for the creation of open space, it is admittedly in violation of the Open Space Lands Act, Act of January 19, 1968, P.L. (1967) 992, *as amended,* 32 P.S. §§ 5001–5013. At this point, the eminent domain action must be terminated.

The fact that the Taking is only partially illegal cannot be bootstrapped into a lawful taking. It is not for Judges to speculate how much of the land will be used for

recreational purposes and how much will be illegally condemned for open space purposes.

It is overwhelmingly apparent from the totality of the record that the Township seeks to create open space so as to preserve the property values and enhance the esthetic livability of the Township. This is not permitted under the Township Code, or under the Open Space Lands Act.

I would sustain the preliminary objections to the Declaration of Taking.