**TOWNSHIP OF MILLCREEK,**
Appellant

v.

**ANGELA CRES TRUST
OF JUNE 25, 1998.**

Commonwealth Court of Pennsylvania.

Argued April 5, 2011.

Decided July 15, 2011.

Reargument Denied Sept. 6, 2011.

Evan E. Adair, Erie, for appellant.

Herbert Bass, Philadelphia, for appellee.

BEFORE: LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge LEAVITT.

Millcreek Township (Township) appeals an order of the Court of Common Pleas of Erie County (trial court) sustaining the preliminary objections of the Angela Cres Trust of June 25, 1998, (Trust) to the Township's condemnation of Trust land. The trial court held that the Township lacked authority under The Second Class Township Code[1] to take an easement on Trust property for its proposed storm water management project. Discerning no error in the trial court's decision, we affirm.

In June 2005, the Township filed a Declaration of Taking to condemn Trust property, which was followed in January 2006 with an Amended Declaration of Taking. The Township initiated its condemnation of Trust land as part of its "Heidler Road Channel Improvement Project," which was designed to improve storm water drainage. The project will straighten an existing drainage canal that begins at Heidler Road, and crosses land owned by the Trust and by various private landowners. The Township proposes to realign approximately 800 feet of this channel; add three culverts fifty feet in length; and install concrete block bank walls along the canal. The proposed realignment will create 500 linear feet of new drainage channel where none currently exists. The Township's taking will burden approximately 0.618 acres of Trust land with an easement.

The Trust filed preliminary objections to the Township's condemnation, and the Township responded with a motion to dismiss. The trial court denied the Township's motion and scheduled a hearing on

---

1. Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101–68701.

the Trust's preliminary objections for December 2009.

In August 2009, the Trust moved to limit the legal issues in the hearing. It asserted that Sections 1513 and 2702 of The Second Class Township Code, on which the Township relied, did not authorize the Township's condemnation. Section 1513 authorizes a township to

> *widen and deepen watercourses* running through the township ... to prevent water from overflowing the banks. For these purposes, townships may enter and condemn property as may be necessary.

53 P.S. § 66513 (emphasis added). Section 2702(a) authorizes a township to acquire an

> *existing* system or facility for the management of surface water runoff which may have been established or constructed by any property owner in the township. . . .

53 P.S. § 67702(a) (emphasis added). The Trust argued that the Township was not "deepening" or "widening" an existing watercourse but creating a new channel. It also argued that two pipes that empty into a ditch on Trust property was not an "existing system" constructed to manage surface water runoff. Therefore, The Second Class Township Code did not authorize the Township's condemnation. The trial court granted the motion and limited the hearing to those two issues. Only if the Township prevailed would the other issues raised in the Trust's preliminary objections be addressed.

The Trust first presented the testimony of Greg Newell, a civil engineer. He testified that the Township's project would change the course of the existing channel, not just deepen and widen the existing watercourse. It would create the new channel 500 feet long where no channel presently exists. Newell then testified about the ditch and two pipes located on Trust property and whether they were constructed to manage surface water runoff. He explained that in 1964 a drain pipe 30 inches in diameter and a storm drain manhole were constructed on the Trust property by adjacent landowners, the Pomeroys, under an easement granted to the Pomeroys. The recorded easement shows a pipe 15 inches in diameter. However, Newel explained the 15–inch clay pipe that exists today on the Trust property appears not to be the one in the easement because it is placed in a different angle and direction. The manhole collects water from the 30–inch and 15–inch pipes and directs it into a ditch on the Trust property.

Next, the Trust presented Paul White, a geologist, who testified about his investigation of the 15–inch pipe. He traced the pipe from the manhole using an instrument that emits an electromagnetic signal. White opined that the 15–inch pipe that ties into the manhole is not the one shown in the Pomeroy easement. On cross-examination, White stated that the instrument went 37 feet into the pipe when it hit an obstruction. He did not believe the obstruction was caused by a turn in the line, because the instrument can make turns. White also opined that the 15–inch pipe and manhole collect groundwater, not surface water.[2] Specifically, he believed the pipe was installed as part of a tile drainage system, typically used to draw shallow groundwater from agricultural

**2.** Surface water or storm water runoff is generated when precipitation from rain and snowmelt events flows over land or impervious surfaces and does not percolate into the ground. Groundwater is water held underground in soil or permeable rock, often feeding springs and wells.

fields. The Trust property is used for agricultural purposes.

At the conclusion of White's testimony, the Trust explained that its evidence on the 30–inch and 15–inch pipes was offered in response to the Township's position expressed in its answer to the Trust's preliminary objections. The Trust asserted the pipes and manhole had no bearing on whether the Township's condemnation was authorized by The Second Class Township Code. This was because the project was leaving the pipes, manhole and ditch intact and unchanged. Accordingly, their existence and purpose were irrelevant to the proposed condemnation.

The Township responded with the testimony of Clayton Fails, a professional engineer. Fails testified that the Township's decision to move the channel was made in response to a request of the Trust's adjacent property owner. Fails estimated that the new channel would be located 20 to 30 feet from the existing channel. Fails opined that the 15–inch pipe was more likely a storm sewer pipe and not a tile field drainage pipe.

The trial court made a site visit, after which it summarized its findings. The 15–inch pipe, it observed, was broken in a number of places and, thus, does not drain into the ditch on Trust property. Green dye was injected into the pipe at various locations, but it never reached the manhole. The trial court found that because the pipe is not functional, it cannot be part of an "existing system" for managing surface water.

Richard Morris, the Township engineer, testified at a subsequent hearing. He removed obstructions from the 15–inch pipe and, then, green dye eventually arrived at the manhole. Morris opined that the 15–inch pipe that drained into the manhole was the one noted on the Pomeroy easement. Upon cross-examination, Morris admitted that he did not know whether the pipe was installed for the purpose of draining groundwater or surface water.

The trial court sustained the Trust's preliminary objections, concluding that the Township lacked authority under The Second Class Township Code to condemn Trust property. The trial court held that because the Township's project would create approximately 500 linear feet of new channel where no channel presently exists, it was not a project to "widen and deepen watercourses" as allowed by Section 1513 of The Second Class Township Code. It next held that the Township's project would construct a new system or facility for collecting surface water runoff, not improve an existing system, as authorized by Section 2702. In any case, the trial court found that the existing "system" on the Trust's property was not constructed to manage surface water runoff but for draining shallow groundwater from agricultural fields.

The Township appealed to this Court. On appeal,[3] the Township presents two issues for our consideration. First, it contends that the trial court's findings of fact are not supported by substantial evidence. Specifically, the Township argues that the trial court precluded the Township from offering relevant evidence; disregarded unrebutted evidence regarding the nature of the watercourse and the sources of the storm water; and made findings not supported by the record.

---

3. In an eminent domain proceeding where a trial court has sustained preliminary objections to a declaration of taking, this Court's scope of review is limited to determining whether the trial court abused its discretion, committed an error of law, or whether the findings and conclusions are supported by substantial evidence. *Condemnation by Valley Rural Electric Co-op., Inc. v. Shanholtzer*, 982 A.2d 566, 570 n. 4 (Pa.Cmwlth.2009).

Second, the Township contends that the trial court erred and abused its discretion in holding that The Second Class Township Code did not authorize its condemnation of the Trust's property.

■ When the legislature confers the right to exercise eminent domain power, that power is limited to that which has been expressly stated. *Marple Township v. Marple Newtown School District*, 856 A.2d 225, 227 (Pa.Cmwlth.2004) (citing *In re Legislative Route 1018*, 422 Pa. 594, 596, 222 A.2d 906, 908 (1966)). Further, the legislature's grant of power to condemn property must be strictly construed. *See Olson v. Whitpain Township*, 141 Pa. Cmwlth. 270, 595 A.2d 706, 708 (1991). The trial court, as factfinder, must resolve evidentiary conflicts, and its findings will not be disturbed if supported by substantial evidence. *Thomas A. McElwee & Son, Inc. v. Southeastern Pennsylvania Transportation Authority*, 896 A.2d 13, 17 n. 5 (Pa.Cmwlth.2006), *aff'd*, 596 Pa. 654, 948 A.2d 762 (2008).

■ We first address the Township's contention that the trial court erred in making findings not supported by substantial evidence. Specifically, it contends that the trial court did not permit the Township to present evidence to support its decision to relocate portions of the watercourse and cut short its evidence about the purpose of the 15–inch pipe.

The Trust responds that the trial court gave both parties every opportunity to present any evidence relevant to the question of the Township's authority under The Second Class Township Code. The Township did not proffer any evidence to rebut the fact that 130 linear feet of new channel will be created and located on Trust prop-

erty. The Township's proffered evidence about the need for the project was, simply, irrelevant. Likewise, the Township's evidence on the pipes and ditch was irrelevant because they were not an "existing system or facility" constructed to manage surface water management.

The trial court correctly cut short the evidence. "Good reasons" for a project do not allow a tribunal to ignore the words of a statute. There may be good reasons to move the channel, but condemnation is permitted only to deepen or widen that channel. Likewise no further evidence was needed once the trial court found that the pipes and manhole were not an "existing facility" for managing surface water runoff. In short, the trial court did not err in its evidentiary rulings.

■ Further, the trial court's findings of fact are supported by substantial evidence. The Township contends that the trial court misstated the purpose for the Township's project when it stated that the channel was designed to handle water flow caused by new subdivisions on the south side of Heidler Road. However, this statement, offered only as background, has no bearing on the trial court's holding that the Township lacked statutory authority for its condemnation and was irrelevant to the dispositive issue. In short, the Township's substantial evidence issue lacks merit.

■ In its second issue, the Township argues that the trial court erred and abused its discretion in holding that Sections 1513 and 2702 of The Second Class Township Code did not authorize a condemnation of Trust property to give the Township the easement needed to construct its project.[4] The Township notes

---

4. The Township also argues that Section 2701 provides it with authority to alter facilities to manage surface water runoff. That section provides:

that there is a strong presumption that it has acted properly in filing its declaration of taking and that the party opposing the condemnation bears the heavy burden of demonstrating that the condemnation is illegal. *Township of O'Hara v. Condemnation of an Easement and Right of Way for Public Purposes,* 860 A.2d 1160, 1166–1167 (Pa.Cmwlth.2004).

As noted, Section 1513 authorizes a township to condemn property as necessary to widen and deepen a watercourse running through the township to prevent water from overflowing its banks. 53 P.S. § 66513. The Township acknowledges that portions of the existing channel will be relocated and replaced by another channel to the east but argues, nevertheless, that this relocation is contemplated by Section 1513. It explains that the existing channel "meanders," and by straightening it, the Township will align the new channel with the channel on the other side of the manhole. The Trust responds, simply, that Section 1513 does not authorize a second class township to condemn land to change the course of the channel, whatever the good reason therefor. A "straightening" is not synonymous with "widening." A channel moved 20 to 30 feet from its current location cannot, by any stretch of the English language, be called a "widening." Section 1513 does not authorize a taking for a new and improved "straightened" channel.

■ Section 2702, as noted, authorizes a township to acquire by eminent domain all or part of an existing system for the management of surface water runoff but not for new construction. The Township contends that nothing "new" is being created; it is merely straightening a meandering channel that will collect surface water runoff. The Trust counters that the Township's power to condemn under Section 2702 is limited to an "existing system or facility for the management of surface water runoff." 53 P.S. § 67702. The Township is not exercising its eminent domain power in order to acquire an existing system but to create a brand new one. We agree.

We hold that the trial court correctly held that the Township lacked authority under The Second Class Township Code to condemn Trust property. The statute does not authorize construction of a new watercourse or the construction of a new system to manage storm water runoff. For the foregoing reasons, the order of the trial court is affirmed.

### ORDER

AND NOW, this 15th day of July, 2011, the order of the Court of Common Pleas of Erie County dated December 16, 2009 in the above captioned matter is hereby AFFIRMED.

---

The board of supervisors may plan, design, construct, assemble, install and alter facilities, including, but not limited to, inlets, outlets, systems of piping, diversion terraces, grass waterways, energy dissipaters, storm water retention devices and natural or artificial infiltration areas, to manage surface water runoff.
53 P.S. § 67701. The Township acknowledges that Section 2701 does not confer emi-

nent domain power on the Township but, rather, argues that it gives the Township clear authority to plan, design, construct and alter facilities to manage surface water runoff. The trial court did not discuss Section 2701, and because the Township admits it does not confer eminent domain power, it is not at issue in this appeal.