### BEAR CREEK TOWNSHIP

v.

### Joan H. RIEBEL, Harold J. Harris and Brian W. Harris and Metropolitan Development Group, Inc.

### Appeal of Joan H. Riebel, Harold J. Harris, and Brian W. Harris.

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 2011.

Decided Feb. 13, 2012.

pertise was not required to complete his assigned tasks for the City.

Richard S. Bishop, Kingston, for appellants.

William E. Vinsko, Jr., Wilkes–Barre, for appellee.

BEFORE: PELLEGRINI, Judge,[1] and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Joan H. Riebel, Harold J. Harris, and Brian W. Harris (Landowners) appeal an order of the Court of Common Pleas of Luzerne County (trial court) that overruled their key preliminary objection to Bear Creek Township's (Township) Declaration of Taking.[2] The trial court held

---

[1] This case was assigned to the opinion writer before January 7, 2012, when Judge Pellegrini became President Judge.

[2] One landowner, Metropolitan Development Group, did not file briefs with this Court, and was therefore precluded from participating in the appeal.

that the Township's taking of land for a charter school and a recreational area was authorized by The Second Class Township Code.[3] Concluding that the legislature did not confer power upon the Township to condemn land to be used primarily for a charter school, we reverse the trial court.

At issue are 48.86 acres of undeveloped land owned by Landowners. The Bear Creek Community Charter School (Charter School) is located on land adjacent to Landowners' property and needs more land in order to enlarge its school facilities. To that end, Charter School tried, without success, to purchase property from Landowners.

Thereafter, Charter School, the Bear Creek Foundation (Foundation)[4] and the Township devised a plan to allow Charter School to secure a new school building and develop recreational facilities for Township residents. These facilities would include, *inter alia*, baseball, softball, and soccer fields, a community room, basketball courts, and a nature trail. Public hearings were conducted on the plan.

On September 29, 2009, the parties entered into a Development Agreement. Under this agreement, the Township agreed to condemn 48.86 acres of Landowners' property and then convey it, in fee simple, to the Foundation. Supplemental Reproduced Record at 10b–16b (Supp. R.R.——). The agreement made the Foundation responsible for the cost of the entire project. This included the payment of Landowners' just compensation; the construction of the new school building;

and the development of recreational facilities adjacent to the school. The Public Use and Access Agreement, also executed by the parties on September 29, 2009, provided that the public would be permitted access to the recreational facilities as well as to the library and community room in the school. The hours of public access to the Charter School's library and community room, along with adjacent parking lots and one recreational field, would be limited to "reasonable hours" to be determined by the Charter School.[5] Supp. R.R. 40b. However, all other amenities, such as the nature trail and remaining athletic and recreational fields, would be open to the public every day from dawn to dusk. Supp. R.R. 40b. The Foundation's articles of incorporation provide that upon dissolution, its assets would be distributed for an exempt purpose within Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3), or distributed to a federal, state, or local government agency for a public purpose. In addition, the Public Use and Access Agreement gave the Township a right of first refusal should the Foundation ever decide to sell any part of the land.

On October 5, 2009, the Township filed a Declaration of Taking, and Landowners responded with preliminary objections. Landowners asserted that the declaration was fatally deficient because it did not cite the specific provision of The Second Class Township Code that authorized the taking and that, in any case, that statute did not authorize a condemnation for the purpose of building a charter school. Landowners

---

3. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–68701.

4. The Foundation is a domestic non-profit corporation incorporated for the purpose of owning and maintaining real estate on behalf of the Charter School; fundraising for school activities and expansion; implementing an

educational scholarship program; and facilitating educational activities for the community. *See* Supplemental Reproduced Record at 85b–87b.

5. Only the school could use these facilities during school hours; the school would also have a preference for their after school use.

also argued that the Eminent Domain Code, 26 Pa.C.S. §§ 101–1106, did not permit the Township to condemn property for the purposes stated in the Declaration of Taking. Finally, Landowners claimed that the Township was required to post additional security, in the form of a bond, because its tax base was insufficient to guarantee the Township's ability to pay just compensation.

■ The trial court conducted two days of hearings on Landowners' preliminary objections, and on December 13, 2010, the trial court entered its order. The order sustained Landowners' preliminary objection that the declaration did not contain specific statutory references by which the condemnation was authorized but also granted leave to the Township to amend the declaration with these citations. The order overruled Landowners' remaining preliminary objections, including their central objection that the Township lacked authority to condemn their land for the purpose of constructing a charter school building. Landowners now appeal to this Court.[6]

■ On appeal, Landowners raise three principal issues for our review. They are: (1) whether the Township had the power to condemn their land to build a charter school, even one with recreational facilities open to the public; (2) whether the trial court erred in failing to require the Township to post a bond; and (3) whether the trial court erred in permitting the Township to file an amended declaration of taking. In their first issue, Landowners have raised new legal theories not raised in their preliminary objections. They assert that the Township's condemnation was prohibited by the Property Rights Protection Act, 26 Pa.C.S. §§ 201–207;[7] that the Township unlawfully delegated its powers of eminent domain to the Foundation; and that the Declaration of Taking did not contain a sufficient description of the purpose of the condemnation.

The Township responds, first, that Landowners have waived all issues, save those raised in their preliminary objections. We agree.

■ Preliminary objections are the exclusive method of challenging a declaration of taking. Further, the Eminent Domain Code requires all preliminary objections to be raised at one time and in one pleading. 26 Pa.C.S. § 306(d). A "[f]ailure to raise [an issue] by preliminary objections ... shall constitute ... waiver." 26 Pa.C.S. § 306(b). Accordingly, we confine our review to those issues Landowners raised in their preliminary objections. They are: whether the Township's condemnation was for a purpose authorized by The Second Class Township Code; whether the inclusion of a school justified the condemnation because it was "incidental" to the recreational purpose; whether the trial court erred in failing to require the

---

6. On appeal, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *In re Condemnation by the City of Coatesville of Certain Properties and Property Interests for Use as a Public Golf Course*, 822 A.2d 846, 849 n. 6 (Pa.Cmwlth.2003). An abuse of discretion occurs when a trial court renders a judgment that is manifestly unreasonable, arbitrary, or capricious, fails to apply the law, or was motivated by partiality, prejudice, bias, or ill will. *Harman ex rel. Harman v.*

*Borah*, 562 Pa. 455, 469, 756 A.2d 1116, 1123 (2000).

7. Specifically, Landowners argue that the Foundation is a "private enterprise." Under the Property Rights Protection Act, land cannot be taken for benefit of a private enterprise. There is no question that the Foundation, which will own the condemned land, is an entity that does not hold the power of eminent domain.

Township to post a bond; and whether the trial court erred in allowing the Township to amend its Declaration of Taking to add the specific provisions of statutes upon which the taking was made.

■ In their first issue, Landowners argue that the trial court erred in using a "public purpose test" to determine the propriety of the condemnation rather than applying Section 2201 of The Second Class Township Code, 53 P.S. § 67201. Landowners argue that the recreational facilities proposed by the Township were made part of the condemnation only to provide cover for the Township's true objective, which is to take their land for a new school building. That "true objective" is not a taking authorized by The Second Class Township Code.

In support, Landowners note that the Declaration of Taking itself states that a new school building is the primary reason for the taking. *See* Reproduced Record at 1a–3a (R.R.____). In addition, the Township Supervisors testified that the plan for the Charter School campus and recreational facilities was developed by the Foundation and thereafter sold to the Township. The Supervisors conceded that until they heard from representatives of the Foundation, the Township had no plans to develop recreational facilities. Finally, the Township Supervisors admitted that the Township would not have undertaken the project but for the Foundation's offer to finance and construct the facilities.

The Township responds that the land was expressly condemned for a recreational purpose, including the development of athletic fields, a nature trail and indoor recreational facilities within the school. Further, the Township argues that Land-

owners offer a very restrictive interpretation of Section 2201 of The Second Class Township Code, which states:

> The board of supervisors may designate lands or buildings owned, leased or controlled by the township for use as parks, playgrounds, playfields, gymnasiums, swimming pools, indoor recreation centers, public parks and other recreation areas and facilities and *acquire lands or buildings by lease, gift, devise, purchase or by the exercise of the right of eminent domain for recreational purposes* and construct and equip facilities for recreational purposes.

53 P.S. § 67201 (emphasis added). Finally, the Township argues that its taking conforms to the principles established in *Middletown Township v. Lands of Stone,* 595 Pa. 607, 939 A.2d 331 (2007), because a specific and detailed plan to establish recreational facilities was in place at the time it filed its declaration of taking.[8]

■ It is presumed that a township has acted lawfully when it condemns property. *Pidstawski v. South Whitehall Township,* 33 Pa.Cmwlth. 162, 380 A.2d 1322, 1324 (1977). It is equally true, however, that a township's power of eminent domain must be strictly construed. *Golding v. New Britain Township,* 33 Pa.Cmwlth. 635, 382 A.2d 509, 511 (1978). Here, Section 2201 of The Second Class Township Code authorizes a township to acquire "lands or buildings" to create "parks, playgrounds, playfields, gymnasiums, swimming pools, indoor recreation centers, public parks and other recreational areas and facilities." 53 P.S. § 67201. This list explains what the Legislature meant by "recreational purposes." The list does not include "schools." A school is a type of "building," but its purpose is educational, not recre-

---

8. That plan was established in the Development Agreement as well as the related Agreement of Sale, Concept Plan, Indemnification Agreement, and Public Use and Access Agreement. *See* Supp. R.R. 10b–51b.

ational. Further, the Township does not seek to acquire an existing school building but, rather, to condemn land to construct a school. Thus, when the legislature authorized a board of supervisors to "acquire lands or building by lease, gift, devise, purchase or by the exercise of the right of eminent domain *for recreational purposes;* " it meant what it said, and it did not identify construction of a school as having a recreational purpose.

There are an infinite number of public purposes to which condemned land may be put to use; however, a second class township may only condemn land for those public purposes specified by the Legislature. The Second Class Township Code identifies, with particularity, a second class township's condemnation powers. It may condemn land when necessary to deepen and widen a watercourse; to build an airport; to build township buildings; to build a landfill for garbage and other refuse; to repair roads; to eliminate dangerous curves in a township road; to build or acquire sanitary sewers; to acquire existing water systems; and to acquire existing storm water management facilities. *See* Sections 1513, 1514, 1701, 2104, 2310(b), 2312, 2501, 2505, 2515, 2516, 2601(b) and 2702 of The Second Class Township Code, added by the Act of November 9, 1995, P.L. 350, *as amended,* 53 P.S. §§ 66513, 66514, 66701, 67104, 67310(b), 67312, 67501, 67505, 67515, 67516, 67601(b) and 67702. Absent from this list is the ability to condemn land to construct a school. Further, the specific grants of eminent domain power would not be necessary if a second class township had broad authority to condemn land and buildings for any public purpose.

As this Court explained in *Township of Millcreek v. Angela Cres Trust of June 25, 1998,* 25 A.3d 1288, 1292 (Pa.Cmwlth.2011), the power of eminent domain "is limited to that which has been expressly stated." In *Township of Millcreek,* we affirmed the trial court's holding that the power to condemn land for the purpose of deepening and widening a watercourse did not include the power to straighten that watercourse by changing its channel. We also rejected the notion that a "good reason" for moving the watercourse allowed the court to deviate from the precise words of the statute. These principles require us to find, simply, that building a charter school is not one of the enumerated recreational purposes for which land can be condemned under Section 2201 or any other provision of The Second Class Township Code.

The Township argues, however, that even if its condemnation lacked a recreational purpose, it can condemn land so long as it is for a public purpose. The Charter School is a public school and serves a public purpose. In support, the Township cites *In re Condemnation of Land for the South East Central Business District Redevelopment Area # 1,* 946 A.2d 1143 (Pa.Cmwlth.2008).[9] The trial court agreed with this argument.

■ The *sine qua non* of any condemnation is that it must serve a public purpose. *Middletown Township,* 595 Pa. 607, 939 A.2d 331. However, we are constrained by statute to consider whether the condemnation was authorized for a particular public purpose, *i.e.,* a recreational purpose, as provided in Section 2201 of The Second Class Township Code. The declaration itself stated that the condemned land would be used for recreation *and* for the Charter School's expansion.

9. *South East Central Business District* involved the condemnation of land under the Urban Redevelopment Law, Act of May 24,

1945, P.L. 991, *as amended,* 35 P.S. §§ 1701–1719.2, not The Second Class Township Code.

In *Middletown Township,* the Supreme Court considered the condemnation of a farm brought under Section 2201 of The Second Class Township Code. Stone, the farm's owner, argued that the township's real objective was to preserve open space, not to develop recreational facilities. Stone argued that the township's action violated Section 8 of what is commonly referred to as the Open Space Lands Act, 32 P.S. § 5008,[10] which prohibits second class townships from condemning land to prevent development. The evidence supported Stone's assertion, and the Supreme Court found the condemnation to be improper.

Our Supreme Court explained that a taking will be proper only if the public will be the primary and paramount beneficiary of the taking. *Middletown Township,* 595 Pa. at 617, 939 A.2d at 337. It went on to note that

> [b]ecause the law requires that the true purpose of the taking be recreational, it is not sufficient that some part of the record support that recreational purposes were put forth. But rather, in order to uphold the invocation of the power of eminent domain, this Court must find that the *recreational purpose was real and fundamental, not post-hoc or pre-textual.*

*Id.* at 618, 939 A.2d at 338 (emphasis added).

Here, the Declaration of Taking itself establishes that the dominant reason for the condemnation was to permit expansion of the Charter School with construction of a new school. The declaration states that the Township has the right to "condemn property by ordinance, specifically for the purpose of acquiring, by condemnation proceedings, any land, ... necessary ... *for the construction of a public charter school within the Township....*" R.R. 1a–2a (emphasis added). Exhibit B, attached to the declaration, confirms that the primary reason for the condemnation was the construction of a new school building for the Charter School. In relevant part, "Exhibit 'B' " states:

> WHEREAS, the parties have identified real property within the Township *for the design, development and construction of a public elementary and middle school operated as a public charter school* together with recreational fields and facilities ("Recreation/Charter School Project"); and

> \*    \*    \*

> WHEREAS, the Recreation/Charter School Project includes capital projects in the nature of the construction of an elementary and middle school facility to accommodate up to Four Hundred Seventy Five (475) students including *accessory* recreational fields and playgrounds for the students and residents of Bear Creek Township and surrounding areas; and

> WHEREAS, the parties hereto are desirous of creating additional recreation and community areas for the residents of Bear Creek Township and the surrounding communities, and the Real Property has been identified as the area which best-suits the goals of the Township and the other parties; and

> WHEREAS, the development, construction and completion of the Recreation/Charter School Project *so as to provide a conveniently located school* avoids the need for long distance and hazardous transportation of students and is vital to the continuing residential

10. Act of January 19, 1968, P.L. (1967) 992, *as amended,* 32 P.S. § 5008.

and economic growth of the Township....

Supp. R.R. 10b (emphasis added).

In addition to the declaration, other evidence shows that the Township's real purpose in the condemnation was for the school, not for recreation. The Foundation, not the Township, initiated the project and did the planning, which included the dedication of a portion of the land for recreational areas. The Township Supervisors' testimony also showed that they had not identified any need for more recreational facilities in the Township prior to being approached by the Charter School and Foundation.

We are unpersuaded by the Township's argument that the condemnation was appropriate because it was done pursuant to an established and detailed plan. It appears, rather, that the Township did exactly what the Supreme Court cautioned against in *Middletown Township*. The Foundation's plan, later adopted by the Township, was done to justify the condemnation "post hoc;" it was not done to address the Township's perceived need for more recreational facilities.

■ The Township argues that the condemnation is proper because the Charter School is an incidental use, and is therefore authorized by Section 204(b)(2)(iii) of the Eminent Domain Code. Section 204(b)(2)(iii) states that private property cannot be taken and used to further a private enterprise unless the "private enterprise . . . occupies an incidental area within a public project, such as retail space, office space, restaurant and food service facility or similar incidental area." 26 Pa.C.S. § 204(b)(2)(iii).

The Township's argument lacks merit. First, Section 204(b)(2)(iii) applies to private uses, not public uses such as a charter school. Second, the Charter School is not occupying an "incidental area" within the condemned land. It will use one-third of that area, and most of the costs of implementing the plan will go to the building of the school. The school's operating hours will even govern use of some of the recreational facilities. In any case, a charter school is not a "retail space, office space, restaurant and food service facility. . . ." or even similar to those permitted incidental uses. 26 Pa.C.S. § 204(b)(2)(iii).

The record shows that the expansion of the Charter School was the primary reason for the Township's taking. Simply stating that land is being taken for a recreational use and thereafter developing a detailed plan does not justify the condemnation. The Second Class Township Code does not authorize a taking for a charter school or, for that matter, any school. Adding recreational facilities to the condemnation did not overcome the absence in The Second Class Township Code of the power to condemn land to build a school.

Accordingly, we reverse the trial court.[11]

### ORDER

AND NOW, this 13th day of February, 2012, the order of the Court of Common Pleas of Luzerne County dated December 13, 2010, in the above-captioned matter is hereby REVERSED.

---

11. Because we conclude that the Township did not condemn Landowners' property for a recreational purpose, we need not address Landowners' other arguments.