IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Condemnation of Property in Rem Identified as Tax Parcel Number 62-00-02014-00-3 in the Township of Upper Salford Montgomery County, Pennsylvania | : : : : : : : : | **CASES CONSOLIDATED** |
| Township of Upper Salford Condemnor and Jeffrey L. Clemens and Kelly B. Clemens | : : : : | |
| Appeal of: Jeffrey L. Clemens and Kelly B. Clemens | : : : | No. 1101 C.D. 2023 |
| In re: Condemnation of Property in Rem Identified as Tax Parcel Number 62-00-02014-00-3 in the Township of Upper Salford Montgomery County, Pennsylvania | : : : : : : : : | |
| Township of Upper Salford Condemnor and Jeffrey L. Clemens and Kelly B. Clemens | : : : : | |
| Appeal of: Barry Yeager and Wyn Yeager | : : | No. 1198 C.D. 2023 Argued: December 9, 2024 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT          FILED: February 4, 2025

Before this Court are the consolidated appeals filed by Jeffrey L. Clemens and Kelly B. Clemens (Landowners) and Barry Yeager and Wyn Yeager (Intervenors) to challenge an order of the Court of Common Pleas of Montgomery County (trial court) that overruled their preliminary objections to the declaration of

taking filed by the Township of Upper Salford (Township).  On appeal, Landowners and Intervenors argue that the trial court erred in finding that the real and fundamental purpose of the Township's taking was for a recreational purpose and, as such, authorized by Section 2201 of The Second Class Township Code (Township Code).[1]  They contend that the record evidence demonstrated that the true purpose of the Township's taking was to preserve open space, and Section 8 of what is commonly referred to as the Open Space Lands Act (Lands Act)[2] authorizes only a county to condemn land for the purpose of preserving open space.  Upon review, we affirm.

**Background**

At issue is a 22.34-acre parcel of land identified as Lot 1 on Spring Mount Road, Tax Parcel No. 62-00-02014-00-3 (Property) in the Township.  On March 25, 2021, Landowners entered into a sales agreement with Intervenors for the transfer of the Property, with closing scheduled for July 22, 2022.

On July 20, 2022, the Township filed a declaration of taking to acquire "a fee simple title" to the Property for purposes of

> provid[ing] *open space, parks, active and passive recreational opportunities* for the residents of [the] Township, *and preservation of a unique and valuable natural resource* and natural area within [the] Township, in furtherance with the Township's Open Space Plan.

Landowners Reproduced Record at 29a (R.R. __) (emphasis added).  The declaration of taking recited the condemnation was authorized by the Township Code and the condemnation resolution (Resolution 2022-9) passed by the Township Board of Supervisors (Township Supervisors) on July 12, 2022.

---

[1] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §67201.

[2] Act of January 19, 1968, P.L. (1967) 992, *as amended*, 32 P.S. §5008.

Resolution 2022-9 stated, likewise, that the taking of the Property was "for open space, parks, active and passive recreational activities for the residents of [the] Township, and preservation of unique and valuable natural resource and natural area within the Township[.]" R.R. 22a. It identified the Property

> as being adjacent to or within an area of importance and significance for preservation and conservation as part of the Spring Mountain Conservation Landscape in the Natural Areas Inventory Update adopted and published by Montgomery County [County] in 2008, and within the Spring Mountain Woods area designated as the highest priority site in the 1995 Natural Resources Areas Inventory by [the] County[.]

*Id*. The resolution stated that the Property is "constrained and significantly limited in its suitability for development for residential and residential accessory uses" due to its physical features such as "significant steep slopes." *Id*. 23a.

Landowners and Intervenors filed preliminary objections to the declaration of taking, asserting that the Lands Act prohibited the Township from condemning the Property for the purpose of preserving open space. They claimed that before the Township could condemn land for a recreational purpose, it was required to have previously adopted a concrete recreation plan. The Township lacked such a plan. The preliminary objections also challenged the statement in Resolution 2022-9 that the Property was not suitable for residential development. This statement was belied by the 2008 filing of a preliminary plan to develop 12 residential lots on the Property.

Attached to the preliminary objections was a copy of an email sent on March 24, 2021, from Theodore Poatsy, a Township supervisor, to Landowners, stating that the Township was interested in acquiring the Property, which "will be open forever and the groundwater recharge and aquifers will remain undisturbed."

3

R.R. 19a. In that email, Poatsy proposed to name the parcel "the Clemens Open Space Property or Clemens Woods Property as part of [the Township's] park/trail system." *Id.*

The parties conducted discovery. The documents and depositions produced in discovery became the evidentiary record on which the trial court decided the preliminary objections.

Intervenors submitted into the record the Township's 2007 Open Space and Recreation Plan, which identified the Property as part of "an important greenway connector" to link the Perkiomen Trail to the Township Park. R.R. 183a. The term "greenway" was defined as a "linear open space established along a natural corridor . . . [to] connect parks, preserved areas, cultural resources, or historic sites[.]" *Id.* 167a.

In his deposition, Township Supervisor Poatsy testified that he and Kevin O'Donnell, chairman of the Township Supervisors at the time, walked through the Property in 2020, with Landowners' permission. This walk persuaded Poatsy that "it was a nice property adjacent to our park, the Perkiomen Trail we were completing[,] and it would make [] a beautiful addition to our park township trails system." Poatsy Dep. at 16; R.R. 354a. The Township then began applying for grants "to preserve this property because of the canopy, because of the trees, because of the streams, because of the [] beautiful area." Poatsy Dep. at 18; R.R. 355a.

Poatsy testified that the Township had adopted a recreation plan that proposed placing a trail on the Property to connect the Township's trail system. In 1995, the Township designated the Property for a trail when it "planned the entire township for potential trail connections;" however, the Township did not approach Landowners until 2020 due to a lack of funds to purchase the Property. Poatsy Dep.

4

at 32; R.R. 358a. Poatsy testified that the Township has now connected the Perkiomen Trail and the Township Park, known as "Park-to-Perkiomen," or "P2P Trail Connector." Poatsy Dep. at 72-73; *see also* R.R. 354a. This trail system was expressly named in the Township's 2007 Open Space and Recreation Plan.

Poatsy testified that the trail on the Property will "loop from the [P]ark to Perkiomen to Spring Mountain" as "a wilderness walking trail" or "a dirt footpath." Poatsy Dep. at 39, 74; R.R. 360a, 369a. This trail will provide "access" to the Park-to-Perkiomen Trail, which "satisfies the purpose of recreation." Poatsy Dep. at 73; R.R. 369a. Poatsy testified that he did not know how much of the Property would be occupied by the trail.

In his deposition, Township Supervisor O'Donnell confirmed that the Township condemned the Property "for recreational purposes, open space, [and] preservation of unique features associated with the [P]roperty." O'Donnell Dep. at 19; R.R. 499a. A conceptual sketch of trailways on the Property was part of the 2007 Open Space and Recreation Plan. The Township could not do a more developed plan until a site survey was done after the Township acquires "full and clear title" to the Property. O'Donnell Dep. at 70; R.R. 511a. A site survey will identify amenities as well as constraints, such as slopes and drainage issues. In addition to installation of benches, pathways could be constructed by mowing "to allow for passage through natural areas where you maintain native vegetation[.]" O'Donnell Dep. at 64; R.R. 510a. In O'Donnell's view, the term "open space" includes not only preservation but also "recreational use, trails, [and] amenities that would enhance the opportunities for the public to use it." O'Donnell Dep. at 30; R.R. 501a.

The Township's applications for grants from the County and the Pennsylvania Department of Conservation and Natural Resources (DCNR) to fund the Property's acquisition were also submitted into the record. In the DCNR application, the Township stated that it sought "funding to acquire a 22.34-acre parcel of land *to be preserved in its natural state in perpetuity*;" that Landowners were "open to selling the [P]roperty to the [T]ownship and would prefer for the [P]roperty *to be preserved as open space if possible rather than developed*;" and that the Township "*will preserve the [P]roperty as open space and be responsible for its long-term stewardship*." R.R. 416a (emphasis added). In the "Community Benefits" section, the application stated:

> Over the last several years, the [T]ownship has been working diligently to establish the "Park[-]to[-]Perkiomen Trail Connector" that will link the [] Township Community Park with the Perkiomen Trail. The [T]ownship is in the final stages of funding this 1.1-mile trail project, and construction on Phase One has begun. *This proposed trail will run directly adjacent to the northeastern corner of the [] [P]roperty where [the Township] envision[s] the extension of an unpaved spur or loop hiking trail that will provide direct access to the [] [P]roperty, creating an opportunity to enjoy this beautiful and peaceful stream and hillside environment.*

> While this parcel does not fall within a high or medium need area for close-to-home recreation according to the mapping developed by the Trust for Public Land, *it is in an area designated as "underserved for neighborhood parks" in the [T]ownship's Open Space and Recreation Plan. It will provide additional "off-road" areas to walk in an [sic] part of the Township* where it is not currently safe to walk along the narrow rural roads with their fast-moving traffic, low visibility, and minimal pedestrian infrastructure.

R.R. 418a (emphasis added). The Township's grant application to the County stated that the Property

6

represents a piece of a larger open space network and has the potential to add environmental value to other preserved land in the area--or conversely, to diminish the environmental value of existing open space if it were to be lost to development.

R.R. 428a.

## Trial Court Decision

On September 21, 2023, after oral argument, the trial court overruled the preliminary objections.[3] Landowners and Intervenors appealed to this Court.

In its PA.R.A.P. 1925(a) opinion, the trial court stated that "[i]n looking at the record as a whole[,] it is clear to the court that the Township's primary purpose in condemning the [P]roperty was for recreational use within the Township." Trial Court 1925(a) Op. at 10. The declaration of taking, Resolution 2022-9, and the depositions of Poatsy and O'Donnell established that the Property will "be added to the already extensive park trail system" in the Township, and a public park, "kept more or less in its natural state," constitutes recreation. *Id*. at 9 (quoting *Bernstein v. City of Pittsburgh*, 77 A.2d 452, 455 (Pa. 1951)).

With regard to the statement in the Township's grant applications that acquisition of the Property would preserve open space, the trial court observed that the term "open space" is a concept that includes "land intended for recreational use such as trails;" further, the Township specifically "envisioned the [P]roperty to have an unpaved spur or loop hiking trail," as indicated in its grant application with DCNR. Trial Court 1925(a) Op. at 12 (quotation omitted). As such, the condemnation was for a recreational purpose.

---

[3] The trial court did not hold evidentiary hearings; rather, the parties "opted to rely on argument before the court" and the "evidentiary record created by the filings[.]" Trial Court 1925(a) Op. at 10.

**Appeal**

On appeal,[4] Landowners raise two issues for this Court's review.[5] First, Landowners argue that the trial court erred in holding that the taking was for a recreational purpose. Such a conclusion required the Township to provide "substantial and rational proof by way of an intelligent plan that demonstrates informed judgment to prove that an authorized public purpose [(recreation)] is the true goal of taking[,]" and it did not offer such proof. Landowners Brief at 30 (quoting *Middletown Township v. Lands of Stone*, 939 A.2d 331, 340 (Pa. 2007) (*Middletown Township II*)). The "overwhelming evidence" showed that the condemnation's true purpose was to preserve open space. Landowners Brief at 26. Despite testimony about a 1995 recreation plan, the only plan submitted into the record was the Township's 2007 Open Space and Recreation Plan, which described the Property as part of "an important greenway connector" to link the Perkiomen Trail to the Township Park. Landowners Brief at 31; R.R. 183a. However, the Property is no longer needed for that connection.

---

[4] "[O]ur scope of review is limited to determining whether the trial court abused its discretion or committed an error of law." *In re Condemnation of Certain Properties and Property Interests for Use as a Public Golf Course*, 822 A.2d 846, 849 n.6 (Pa. Cmwlth. 2003). An abuse of discretion occurs when a trial court renders a judgment that is manifestly unreasonable, arbitrary, or capricious, fails to apply the law, or was motivated by partiality, prejudice, bias, or ill will. *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000).

[5] Landowners raise the following issues in the Statement of Questions Involved:

1. Whether the [t]rial [c]ourt erred in failing to determine that the purpose of the taking was the preservation of open space and, thus, unlawful.

. . . .

2. Whether the taking is *per se* unlawful because a stated purpose is to preserve open space.

. . . .

Landowners Brief at 4.

8

In their second issue, Landowners argue that the trial court erred because the declaration of taking and Resolution 2022-9 both used the term "open space." This terminology makes the taking *per se* unlawful under the Lands Act. They note that the "fact that the taking is only partially illegal cannot be bootstrapped into a lawful taking." Landowners Brief at 36 (citing *Middletown Township v. Lands of Stone*, 882 A.2d 1066, 1075 (Pa. Cmwlth. 2005) (Colins, J., dissenting) (*Middletown Township I*), *rev'd*, *Middletown Township II*, 939 A.2d 331). Landowners also point to *Bear Creek Township v. Riebel*, 37 A.3d 64 (Pa. Cmwlth. 2012), where this Court held the township's condemnation unlawful because its true purpose was to build a charter school, which is not a purpose authorized by the Township Code.

In sum, Landowners contend that the Township's recited recreational purpose was pretextual. Even so, taking of the entire 22.34 acres was excessive and not "tailored to the actual purpose" of a trail. Landowners Brief at 38 (quoting *Middletown Township II*, 939 A.2d at 338).

Intervenors' arguments echo those of the Landowners.[6] Intervenors further cite *In re Condemnation Proceedings of Montgomery Township* (Pa.

---

[6] Intervenors raise three issues in the Statement of Questions Involved:

1. Whether the [c]ourt erred in concluding that [Township], a Second Class Township, had the power to condemn the subject Property where the Township's true purpose unmistakably was to preserve open space, which the [ ] Township Code precludes?

. . . .

2. Whether the [c]ourt erred when it found that the Township used its power of eminent domain to take the Property for "recreational purposes," where the Township's repeated public statements consistently were that the Property was taken as open space, and any reference to "recreation" was a pretense, offered

9

Cmwlth., Nos. 2113 & 2114 C.D. 2011, filed November 9, 2012) (unreported),[7] to support their contention that a second class township cannot condemn a property for open space.

The Township responds that Landowners did not meet their burden of showing that the condemnation was for an invalid purpose. The declaration of taking was based upon the Township Code and the Eminent Domain Code.[8] It did not invoke the Lands Act or "exercise the power of eminent domain *in carrying out the provisions of* [*the Lands*] [*A*]*ct.*" Section 8(b) of the Lands Act, 32 P.S. §5008(b) (emphasis added). A township's preservation of open space is not prohibited by the Lands Act or the Eminent Domain Code, as suggested by Landowners and Intervenors but, rather, encouraged. For example, the Lands Act authorizes townships to enact taxes for the acquisition of "lands desirable to keep open." Township Brief at 11. The Township maintains that it may acquire land both for recreation and conservation under the Township Code and the Lands Act. *Id*. at 28.

The Township explains that although its grant applications listed preservation of open space as one reason for the acquisition of the Property, that

_____

as an after-the-fact pretext, not credible, and could not justify taking the entire 22.34-acre Property?

. . . .

3. Whether the [c]ourt erred in finding that the Township had the power to condemn the entire 22.34-acre Property, when the sole justifications offered were for a meandering dirt pathway, or a "wilderness disc golf course" of unknown dimensions through a small portion of the Property?

. . . .

Intervenors Brief at 3.

[7] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

[8] 26 Pa. C.S. §§101-1106.

10

statement did not render the condemnation *per se* illegal. Open space may serve many public purposes, such as active and passive recreation, as well as preservation of natural features. Further, "at the present time, it is easier to acquire government funding for the preservation of 'open space[.]'" Township Brief at 28. The Property lies in "an area of the Township long prized for its trail connections to beautiful and environmentally sensitive lands." *Id*. at 22. Noting that the condemnation would both preserve open space and expand the Township's trail system, Poatsy stated: "It's not one or the other, it's one and the other." *Id*. at 19 (quoting Poatsy Dep. at 27; R.R. 360a). The completion of the Park-to-Perkiomen Trail connector was the "impetus for the acquisition of" the Property, which has direct access to the trail connector and will allow expansion of the Township's trail system through a beautiful natural area. Township Brief at 24.

The Township argues that *Middletown Township II* is distinguishable. In that case, the evidence suggested that the taking of the property for recreational purposes was pretextual; its real purpose was to stop a proposed residential subdivision and development. Here, Landowners filed a preliminary plan in 2008 for the development of 12 residential lots on the Property. The Township did not file its declaration of taking until 2022. Further, the record established that the Property is located where the Township has "long sought to acquire natural areas for the trails and trail connections." Township Brief at 17. In short, the primary purpose of the condemnation of the Property was to provide for a public recreational use and not to stop a development.

**Applicable Statutory and Case Law**

The Township Code authorizes second class townships to acquire land for specific purposes. It states:

11

> *The board of supervisors may* designate lands or buildings owned, leased or controlled by the township for use as parks, playgrounds, playfields, gymnasiums, swimming pools, indoor recreation centers, public parks and other recreation areas and facilities and *acquire lands or buildings by lease, gift, devise, purchase or by the exercise of the right of eminent domain for recreational purposes and construct and equip facilities for recreational purposes*.

Section 2201 of the Township Code, 53 P.S. §67201 (emphasis added). An acquisition by eminent domain is limited to "recreational purposes." *Id*.

The Lands Act authorizes a local government unit[9] to acquire "any interest in real property situate within its boundaries" for any one of a host of conservation purposes, including efficient development, recreation, and the preservation of open space. Section 5(c)(1) of the Lands Act, 32 P.S. §5005(c)(1).[10]

---

[9] Section 2 of the Lands Act defines "local government unit" as:

> (i) *A county*;
>
> (ii) a county authority having among the purposes for which it was created the achievement of one or more of the open space benefits set forth in this section;
>
> (iii) *a municipal corporation or any similar general purpose unit of local government*; *or*
>
> (iv) any unit created by joint action of two or more local government units which is now or shall hereafter be authorized to be created by the General Assembly, including cooperation by two or more local government units in accordance with the former act of July 12, 1972 (P.L. 762, No. 180), referred to as the Intergovernmental Cooperation Law, or 53 Pa.C.S. Ch. 23 Subch. A (relating to intergovernmental cooperation).

32 P.S. §5002 (emphasis added).

[10] It states, in pertinent part, as follows:

> *A local government unit may acquire any interest in real property situate within its boundaries by* purchase, contract, *condemnation*, gift, devise or otherwise, *for any of the purposes set forth in clauses (1) through (8) of subsection (a) of this section*, and may acquire any interest in real property situate within its boundaries by purchase, contract, gift or devise, for any of the purposes set forth in clause (1) of subsection (b) of this section, including limiting the use of real property to achieve

12

The local government unit may acquire the property interest "by . . . condemnation[.]" *Id.* However, Section 8 of the Lands Act provides the following restrictions:

> (a) Use of the power of eminent domain to acquire interests in real property for the purposes of this act shall be exercised in accordance with the provisions of the Eminent Domain Code of the Commonwealth.
>
> (b) *Notwithstanding the provisions of subsection (a) or section 5(c), local government units other than counties or county*

---

open space benefits by reselling real property acquired in fee simple, subject to restrictive covenants or easements limiting the use thereof for the purposes set forth in clauses (1) through (7) of subsection (a) and clause (1) of subsection (b) of this section.

32 P.S. §5005(c)(1) (emphasis added).  Section 5(a) of the Lands Act further provides:

The Commonwealth of Pennsylvania, through the Department of Conservation and Natural Resources, may acquire any interest in real property by purchase, contract, condemnation, gift, devise or otherwise, for any of the following purposes:

(1) To protect and conserve water resources and watersheds;

(2) To protect and conserve forests and land being used to produce timber crops;

(3) To protect an existing or planned park, forest, wildlife preserve, nature reserve or other recreation or conservation site by controlling the use of contiguous or nearby lands in order to protect the scenic, aesthetic or watershed values of the site;

(4) To protect and conserve natural or scenic resources, including but not limited to soils, beaches, streams, flood plains or marshes;

(5) To protect scenic areas for public visual enjoyment from public rights of way;

(6) To preserve sites of historic, geologic or botanic interest;

(7) To promote sound, cohesive, and efficient land development by preserving open spaces between communities;

(8) To limit the use of the real property so as to achieve open space benefits by reselling real property acquired in fee simple, subject to restrictive covenants or easements limiting the use thereof for the purposes specified in clauses (1) through (7) hereof.

32 P.S. §5005(a).

13

> *authorities may not exercise the power of eminent domain in carrying out the provisions of this act*.

32 P.S. §5008 (emphasis added). Reading Section 5(c) together with Section 8(a), it appears that a second class township may hold land for a strictly conservation purpose that is acquired by condemnation, but the township cannot be the condemnor.

"Preliminary objections are the sole method by which a condemnee may challenge the declaration of taking." *In re Condemnation Proceeding by South Whitehall Township Authority*, 940 A.2d 624, 627 n.2 (Pa. Cmwlth. 2008). Preliminary objections "resolve expeditiously the factual and legal challenges to a declaration of taking before the parties proceed to determine damages." *Township of Millcreek v. Angela Cres Trust of June 25, 1998*, 142 A.3d 948, 951 n.2 (Pa. Cmwlth. 2016).

In its review of preliminary objections, the court must determine "whether the condemnor is guilty of fraud, bad faith, or has committed an abuse of discretion." *Appeal of Waite*, 641 A.2d 25, 28 (Pa. Cmwlth. 1994). The burden of proof "is on the objector or condemnee, and that burden is a heavy one because, in such cases, there is a strong presumption that the condemnor has acted properly." *In re Condemnation No. 2 by Commonwealth ex rel. Department of General Services*, 943 A.2d 997, 1002 (Pa. Cmwlth. 2007). Further, it "is presumed that the officials have performed their duties in good faith[.]" *Downingtown Area School District v. DiFrancesco*, 557 A.2d 819, 821 (Pa. Cmwlth. 1989) (quotation omitted).

"A township's power of eminent domain must be strictly construed." *Bear Creek Township*, 37 A.3d at 68. There are an infinite number of public purposes to which condemned land may be put to use; however, a second class township may only condemn land for those public purposes specified by the

14

legislature. Section 2201 of the Township Code authorizes a township to acquire "lands or buildings" to create "parks, playgrounds, playfields, gymnasiums, swimming pools, indoor recreation centers, *public parks and other recreational areas and facilities*[.]" 53 P.S. §67201 (emphasis added).

In *Middletown Township II*, 939 A.2d 331, the township condemned a 175-acre farm for "recreation and open space purposes" shortly after it was presented with a subdivision plan for the farm. *Id*. at 333 (quotation omitted). However, the chairman of the township supervisors stated to the local newspaper that the condemnation was to preserve open space. Further, the condemnee would be allowed to "keep doing whatever he is doing on it. We just [do not] want it to go to developers." *Id*.

The preliminary objections contended that the township lacked the authority to condemn land for open space purposes. The common pleas court acknowledged that the township had no specific plan for the property, but it did not matter because potential "recreational purposes" could be hypothesized. *Id*. at 334. These options included allowing the condemnee to continue to farm the land; using a portion of the farm to provide an alternative entrance to a Celebration of Lights event in a township park; and using the remainder of the land for passive recreation.

This Court affirmed the common pleas court. The common pleas court found, as fact, that the township condemned the farm for recreational uses, including a public park. We concluded that it was irrelevant that one stated purpose for the taking was to conserve open space. The Lands Act does not allow a township to exercise eminent domain to carry out its provisions; however, the township did not act under authority of the Lands Act but, rather, under authority of the Township Code. As such, we held that the restriction in the Lands Act did not apply.

15

The dissenting opinion contended, *inter alia*, that because the declaration of taking stated that the condemnation would create open space, this placed the township in violation of the Lands Act. As such, "the eminent domain action must be terminated." *Middletown Township I*, 882 A.2d at 1075 (Colins, J., dissenting). The dissent concluded by stating, "[t]he fact that the [t]aking is only partially illegal cannot be bootstrapped into a lawful taking." *Id.*

Our Supreme Court reversed this Court. It observed as follows:

The Township Code gives power to second[ ]class townships to condemn land for recreational purposes. The Lands Act withholds power from second[ ]class townships to condemn land for open space purposes. *The two statutes do not conflict.*

*Middletown Township II*, 939 A.2d at 337 (emphasis added). For the condemnation to be authorized under the Township Code, the recreational use "must be the true purpose behind the taking or else the [t]ownship simply did not have the authority to act, and the taking was void *ab initio*." *Id.* at 337-38. In determining whether the true purpose of the taking was recreational, the Supreme Court instructed that

it is not sufficient that some part of the record support[s] *that recreational purposes were put forth.* But, rather, in order to uphold the invocation of the power of eminent domain, *this Court must find that the recreational purpose was real and fundamental*, *not post-hoc or pre-textual*.

*Id.* at 338 (emphasis added).

Using the facts found by the common pleas court, the Supreme Court concluded that they did not support the conclusion that the true purpose of the township's taking was for a recreational purpose. At the public meeting on a preliminary plan for a residential subdivision on the farm, the supervisors stated that the development must be stopped. Two weeks later, the supervisors passed a condemnation resolution, but the record did not include a "proposed recreational use

16

related specifically to the [] property." *Id*. at 339. The after-the-fact suggestions, such as using some of the land to extend the driveway for an adjacent park, "crosse[d] into unauthorized territory" because the entire 175 acres was not needed for that purpose. *Id*.

The Supreme Court held that to satisfy the Township Code, the township had to identify the recreational purpose and then take action to effectuate that purpose. The Court elaborated as follows:

> [P]recedent demonstrates that *condemnations have been consistently upheld when the taking is orchestrated according to a carefully developed plan which effectuates the stated purpose* . . . . Anything less would make an empty shell of our public use requirements. It cannot be sufficient to merely wave the proper statutory language like a scepter under the nose of a property owner and demand that he forfeit his land for the sake of the public. *Rather, there must be some substantial and rational proof by way of an intelligent plan that demonstrates informed judgment to prove that an authorized public purpose is the true goal of the taking*.

*Middletown Township II*, 939 A.2d at 340 (emphasis added) (internal citations omitted). The record showed that one of the suggested purposes, continued farming by the current owner, was a purely private purpose. In the absence of "a concrete plan to use the [property]" for recreation, the Supreme Court remanded the matter to the common pleas court for further proceedings on whether the condemnation was for a recreational purpose. *Id*.

In *Bear Creek Township*, 37 A.3d at 66, the township condemned 48.86 acres of undeveloped land for construction of a charter school and recreational facilities. A key issue in the appeal was whether the school was validly "incidental"

17

to the condemnation's stated recreational purpose. *Id*. at 67.[11] We held that the dominant, not "incidental," reason for the condemnation was the school and not recreation. *Bear Creek Township*, 37 A.3d at 71.

Finally, in *Montgomery Township*, slip op. at 2-3, the township condemned a total of 50 acres of land for park and recreation purposes. The condemnee filed preliminary objections, contending that the actual purpose was to preserve open space. The trial court overruled the preliminary objections without holding a hearing or permitting discovery.

The condemnee appealed. The township responded that its recreational purpose was established in its recreation and open space plan; in the declaration of taking; and in the resolution for the condemnation. Accordingly, there was no genuine issue of material fact that necessitated an evidentiary hearing. The Eminent Domain Code requires only that a declaration of taking contain "[a] brief description of the purpose of the condemnation." 26 Pa. C.S. §302(b)(4). The brief description in the declaration sufficed to show that the actual purpose of the taking was recreation, and, thus, there was no need to look deeper into the matter.

In rejecting the township's arguments, this Court relied on the Supreme Court's instruction that courts "must find that the recreational purpose was real and fundamental, not post-hoc or pre-textual." *Montgomery Township*, slip op. at 11 (quoting *Middletown Township II*, 939 A.2d at 338). We held that the trial court erred by refusing to develop an evidentiary record when presented with a claim that the condemnation was not authorized by the Lands Act. We remanded the matter for a hearing.

---

[11] An incidental private enterprise is permitted in a public project, such as a permitted restaurant. 26 Pa. C.S. §204(b)(2)(iii). The charter school did not meet the definition of "incidental" use because of its size.

18

## Analysis

In their first issue, Landowners and Intervenors argue that the trial court erred in finding that the primary purpose of the taking was for a public recreational purpose. The Township had not adopted "a carefully developed [recreation] plan" for the Property in advance of filing its declaration of taking. Landowners Brief at 30 (quoting *Middletown Township II*, 939 A.2d at 340). Absent such a plan, the trial court's conclusion lacks evidentiary support.

*Middletown Township II*, 939 A.2d at 340, observed that, historically, a "carefully developed plan" will support a condemnation as having a public purpose.[12] However, it did not establish that a condemnor must adopt a written recreational plan before it can exercise its power of eminent domain under the Township Code. Nothing in the Township Code or the Eminent Domain Code requires a "carefully developed plan" for a recreational purpose before a declaration of taking can be filed.

*Middletown Township II* is factually distinguishable. Here, the Township had long contemplated using the Property as part of its park and trail system before the taking, as shown in Poatsy's March 24, 2021, email; Poatsy's and O'Donnell's depositions; and the Township's 2007 Open Space and Recreation Plan. While the grant applications with DCNR and the County stated that the acquisition would conserve open space, they also stated that the community would be benefited by having an extension of the Park-to-Perkiomen Trail in the form of "an unpaved spur or loop hiking trail" on the Property in an area designated as

---

[12] A written plan does not guarantee a successful condemnation. The township in *Bear Creek Township*, 37 A.3d at 68, had a "specific and detailed plan to establish recreational facilities" in place at the time it filed the declaration of taking. However, the record showed that the construction of a charter school was the real and fundamental purpose of the taking; the recreation plan was done to justify the condemnation "post hoc." *Id.* at 70-71.

19

"underserved for neighborhood parks" in the Open Space and Recreation Plan. R.R. 418a. The Township's grant application also included a conceptual drawing of a trail going through the Property. The record did not show, and Landowners and Intervenors did not argue, that the condemnation was done to prevent development or to allow the continuation of a private purpose, as in *Middletown Township II*. Landowners filed a preliminary plan for a 12-house residential development on the Property in 2008; the Township did not file its condemnation until 2022, when it could raise the funds.

Intervenors cite *Montgomery Township* (Pa. Cmwlth., Nos. 2113 & 2114 C.D. 2011, filed November 9, 2012). There, the common pleas court overruled the preliminary objections without holding a hearing or permitting discovery. We held that the common pleas court erred by failing to hold an evidentiary hearing when it was presented with a factual dispute about whether the condemnation was barred by the Lands Act.

*Montgomery Township* is distinguishable. Here, the parties developed a full evidentiary record on which the trial court made findings of fact. The record considered by the trial court included the declaration of taking; Resolution 2022-9; Poatsy's and O'Donnell's depositions; and grant applications stating that funding would allow the expansion of trails, greenways, natural areas, and parks. *Id*. at 12. Viewing the record as a whole, the trial court found that the Township's "intention was to use the land for passive recreation in the form of a trail and park system." *Id*. Because the trial court's findings are supported by substantial evidence, they will not be disturbed. *See Reading Area Water Authority v. Schuylkill River Greenway Association*, 100 A.3d 572, 577 (Pa. 2014) (in eminent domain appeals, courts must "consider factual findings deferentially and resolve legal issues *de novo*").

20

Landowners and Intervenors also argue that the taking was *per se* unlawful because one of the stated purposes in the declaration of taking was to preserve open space, which is unauthorized under the Lands Act. This argument is unpersuasive.

Section 2201 of the Township Code authorizes a township to "acquire *lands* or buildings" to create "*parks*, playgrounds, playfields, gymnasiums, swimming pools, indoor recreation centers, *public parks and other recreational areas* and facilities[.]" 53 P.S. §67201 (emphasis added). While the Township Code does not define "recreation," Merriam-Webster's Collegiate Dictionary defines "recreation" as "refreshment of strength and spirits after work" or "a means of refreshment or diversion." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1040 (2003). Likewise, the dictionary defines "land" as "the surface of the earth and all its natural resources," which includes unimproved lands. *Id*. at 698.

In *In re Condemnation of Lands of Laughlin*, 814 A.2d 872, 873 (Pa. Cmwlth. 2003), the township condemned a 16,595-square-foot property for "public park space" under the Township Code. The property was previously used as a gas station, had a crossing stream, and was within the 100-year floodplain. The lessee of the property, a billboard company, filed preliminary objections contending that the township's condemnation was not authorized by the Township Code. This Court affirmed the common pleas court's decision that the township properly exercised "the right of eminent domain for recreational purposes." *Id.* at 876 (quoting Section 2201 of the Township Code, 53 P.S. §67201). In so holding, we relied upon *Bernstein*, 77 A.2d at 451, wherein our Supreme Court explained that public recreation "is not limited to physical recreation but includes aesthetic recreation and mental and cultural entertainment as well." Accordingly, while the township had

21

not decided "whether the [p]roperty should be left as open space or should have a memorial or some form of artwork placed on it, this fact does not change the nature of the property's use as a park. It is only a question of what kind of park." *Laughlin*, 814 A.2d at 877. In sum, recreation is refreshment that can take many forms. It can occur on open and unimproved land, as well as on a soccer field.

Here, the documentary evidence described the Property as "adjacent to or within an area of importance and significance for preservation and conservation as part of the Spring Mountain Conservation Landscape" and will provide "parks, active and passive recreational opportunities for the residents of [the] Township[.]" R.R. 22a, 29a. The use of the term "open space" or preservation of natural resources does not defeat the fundamental recreational purpose for which the Property was condemned. Land conservation is inevitable in any passive recreational use, which is a public purpose expressly authorized by the Township Code.

Landowners and Intervenors argue that the taking of the entire Property was excessive, but they did not raise this issue in their preliminary objections. As such, the issue is waived. 26 Pa. C.S. §306(b).[13]

---

[13] It states:

> **(b) Waiver.--**Failure to raise by preliminary objections the issues listed in subsection (a) shall constitute a waiver. Issues of compensation may not be raised by preliminary objections.

26 Pa. C.S. §306(b). Subsection (a) provides, in turn:

> **(a) Filing and exclusive method of challenging certain matters.--**
> (1) Within 30 days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking.
> (2) The court upon cause shown may extend the time for filing preliminary objections.
> (3) Preliminary objections shall be limited to and shall be the exclusive method of challenging:

## Conclusion

The Township filed its declaration of taking under authority of the Township Code and the Eminent Domain Code, not the Lands Act. Substantial evidence supports the trial court's finding that the actual purpose of the taking of the Property was for public recreational use. Open space is inevitable in passive recreational use; it does not, on its own, trigger the restriction in Section 8 of the Lands Act, 32 P.S. §5008, and, thus, invalidate a condemnation for recreational purposes under the Township Code.

For these reasons, we affirm the trial court's September 21, 2023, order overruling Landowners' and Intervenors' preliminary objections.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

(i) The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.

(ii) The sufficiency of the security.

(iii) The declaration of taking.

(iv) Any other procedure followed by the condemnor.

26 Pa. C.S. §306(a).

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Condemnation of Property in Rem Identified as Tax Parcel Number 62-00-02014-00-3 in the Township of Upper Salford Montgomery County, Pennsylvania | : | **CASES CONSOLIDATED** |
| Township of Upper Salford Condemnor and Jeffrey L. Clemens and Kelly B. Clemens | : | |
| Appeal of: Jeffrey L. Clemens and Kelly B. Clemens | : | No. 1101 C.D. 2023 |
| In re: Condemnation of Property in Rem Identified as Tax Parcel Number 62-00-02014-00-3 in the Township of Upper Salford Montgomery County, Pennsylvania | : | |
| Township of Upper Salford Condemnor and Jeffrey L. Clemens and Kelly B. Clemens | : | |
| Appeal of: Barry Yeager and Wyn Yeager | : | No. 1198 C.D. 2023 |

## O R D E R

AND NOW, this 4th day of February, 2025, the order of the Court of Common Pleas of Montgomery County, dated September 21, 2023, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita